HAROLD D. MARTIN *v.* MONSANTO COMPANY AND
LIBERTY MUTUAL INSURANCE COMPANY.

[No. 2-473A84. Filed September 17, 1975. Rehearing denied
November 25, 1975.]

*Robert F. Gonderman,* South Bend, *Phil M. McNagny, Jr., Gates, Gates & McNagny,* Columbia City, for appellant.

*Edward N. Kalamaros, Edward N. Kalamaros & Associates Professional Corporation,* South Bend, for appellees.

## CASE SUMMARY

BUCHANAN, J.—Plaintiff-Appellant, Harold D. Martin (Martin), seeks review of a negative Award entered by the Full Industrial Board of Indiana (the Board) denying compensation for back injuries sustained while in the employ of Defendant-Appellee Monsanto Company (Monsanto), claiming the Findings of Fact were not specific enough for intelligent review, the Award is contrary to law, and the Board erroneously admitted two pieces of evidence.

We affirm.

## CASE HISTORY

Upon initial consideration of this case on February 12, 1975, we found the Findings of Fact originally entered by the Board on March 16, 1973, were "insufficiently specific to permit intelligent judicial review" and on February 12, 1975, ordered the Board to make findings of the specific facts upon which the negative award was based.

On March 10, 1975, the Board submitted its "Certification of Specific Findings of Fact," *infra,* and consideration of this appeal was resumed.

## FACTS

The facts and evidence before the Single Hearing Member and reviewed by the Board most favorable to Monsanto and the Award are as follows:

On April 23, 1969, having been in Monsanto's employ for approximately one month, Martin experienced a pain in his lower back while lifting a wooden skid onto a turn-around cart. He testified that as he threw the 4' x 4' skid onto the cart a pain hit him in the lower back so severe that he went down to his knees. He reported the accident to his foreman who made out the accident report and requested medical aid from the plant nurse who then authorized Martin to see Dr. Stone, Monsanto's plant physician.

The following day, Martin was treated by Dr. Stone, who could find no neurological injury and diagnosed his condition as a lower back syndrome or muscle spasm. Dr. Stone prescribed muscle relaxants, pain medication, and a heat belt to relieve the pain. Martin visited Dr. Stone on three additional occasions, the last being May 15, 1969; and, although Martin complained of increased pain on his final visit, in the doctor's opinion, Martin's injuries did not suggest any permanent impairment as a result of the "accident" at work on April 23, 1969.

Martin continued to work on a daily basis until August 8, 1969, at which time, while lifting a box, he experienced pain in his lower lumbar area radiating down his leg. He reported this accident to Ron Kettering, the personnel supervisor; and Kettering testified that Martin informed him that this injury was not a reoccurrence of the April incident, but rather the result of an automobile accident. This latter testimony was refuted by Martin, who claimed that no other accident had taken place between April 23 and August 8, 1969.

Thereafter, on August 29, 1969, Martin was admitted to the Osteopathic Hospital, South Bend, Indiana, having re-

quested no further medical assistance from Monsanto. On September 15, 1969, Martin was moved to the Saint Joseph's Hospital, South Bend, Indiana, and his back problem diagnosed by Dr. Dingley as a herniated intervertebral lumbar disc. At this time, Martin also suffered from additional problems of headaches, nausea, and dizziness, separate and distinct from any work-related injury. Martin was in Saint Joseph's Hospital until October 2, 1969, but continued to see Dr. Dingley until September of 1971.

Martin initially gave Dr. Dingley no history of any accidental injury occurring on or about August 8, 1969, but informed the doctor that his pain had started in May of 1969 and that he had sustained an accident at work in May of 1969. Dr. Dingley testified that in his opinion Martin's ruptured disc condition resulted from the work-related accident (regardless of its date) and that the pain experienced in the August incident was merely a continuation of the original accident. In his opinion Martin had a 30% permanent partial impairment as a result of the initial accident.

Martin resumed work at Monsanto in January, 1970, and has continued to work intermittently as his back condition has permitted.

Martin's Form 9 claim, originally alleging the industrial accident had occurred on May 9, 1969 (as related to Dr. Dingley), was later amended to the April 23 date; and the amended claim was heard by a Single Hearing Member upon the following stipulation of the parties:

"It is hereby stipulated by and between the parties that the hearing of said cause is to proceed on the merits of said cause, as well as the Special Answer filed by the defendant on the 19th day of May, 1970.

"It is further stipulated by and between the parties that on the 23rd day of April, 1969, the plaintiff was in the employ of the defendant at an average weekly wage of $93.60.

"It is further stipulated that on said date the plaintiff sustained an accidental injury arising out of and in the

course of his employment with the defendant herein and that the defendant had knowledge of the said accidental injury on said date; that the sole issue is the question of any temporary total disability resulting from the said accidental injury, whether there was any permanent partial impairment resulting from the said accidental injury of April 23, 1969, and whether medical bills incurred by the plaintiff were as a result of the accidental injury of April 23, 1969, and the sole remaining issue is whether the defendant would have a legal obligation to pay any medical bills incurred by the plaintiff which may be shown to have been incurred as a result of causes wholly unrelated to the accident of April 23, 1969, of the plaintiff's employment with the defendant."

An additional fact considered at the hearing was the pleadings from a negligence suit filed by Martin against the Osteopathic Hospital for a cerebral condition resulting from traction he received there. The uncontested testimony of Dr. Dingley, however, established that the injury therein sustained was unrelated to the lumbar disc syndrome for which Dr. Dingley subsequently treated Martin at the Saint Joseph's Hospital.

Based upon the foregoing evidence, the Hearing Member denied compensation to Martin for any permanent partial disability now present; and Martin filed a Form 16 Application for Review by the Full Board. Pursuant to such hearing and review conducted on January 29, 1973, the Board filed the following Certification of Specific Findings of Fact on March 10, 1975:

"Subsequent to his accidental injury arising out of and in the course of his employment with the defendant, the plaintiff was treated by Dr. R. C. Stone for said injury and Dr. Stone last saw the plaintiff for said injuries on or about May 15, 1969, which date followed the stipulated injury date of April 23, 1969. That as a result of the examination and medical treatment of the injury by Dr. Stone the said doctor stated that plaintiff had neither the symptomatology nor the neurological deficit consistent with herniated intervetebral [sic] disc and that plaintiff's symptoms were consistent with a low back sprain. That as a result of the last

examination of the plaintiff by Dr. Stone on May 15, 1969 the said Dr. Stone stated that plaintiff's injuries, as a result of the accident at work on April 23, 1969, suggested neither permanency nor any permanent impairment arising out of the accidental injury while working for the defendant on April 23, 1969.

"That after the accidental injury of April 23, 1969, the plaintiff lost no time from work until after August 8, 1969, when the plaintiff alleges that he had another accident at work.

"That on or about August 29, 1969, the plaintiff was admitted to the South Bend, Indiana, Osteopathic Hospital. Prior to his admission to this hospital the plaintiff did not request any medical treatment from the defendant-employer related to the accidental injury of April 23, 1969, or related to alleged injury at work on August 8, 1969. That after receiving some treatment from the Osteopathic Hospital the plaintiff was examined by a Dr. Dingley who, upon examination on September 15, 1969, diagnosed a herniated disc for the plaintiff.

"That in connection with the examination of Dr. Dingley the plaintiff did not give said doctor a history of any accidental injury occurring on or about August 8, 1969; the plaintiff stated that his pain started in May of 1969, and that plaintiff had an accident at work in May of 1969. Dr. Dingley found other medical problems, in addition to back problems, and there was no evidence to relate these problems (headaches, nausea, dizziness) to any work-related injury. There is some evidence from Dr. Dingley that the plaintiff's symptoms were related to an injury at work and to injuries while in the Osteopathic Hospital.

"From reading all the evidence in this cause the Full Industrial Board is unable to establish any direct causal relationship between the plaintiff's present back condition and any accidental injury occurring during the course of his employment with the defendant. The plaintiff has not established by a fair preponderance of the evidence that his back condition, as diagnosed by Dr. Dingley, was the result of the accidental injury of April 23, 1969 or from the alleged accidental injury of on or about August 8, 1969; the plaintiff carries the burden of proof and has not sustained that burden of proof in this cause."

Martin appeals those findings and conclusions.

## ISSUE ONE

Were the additional findings of specific facts sufficiently specific to permit an intelligent judicial review of the Board's decision?

*Contentions*

Martin contends that the supplemental findings do not comply with this Court's Order of February 12, 1975 in that the Board failed to specifically find "the 'causes' of Plaintiff-Appellant's 'back affliction' which were 'wholly unrelated to the said employment with the defendant herein.'" Having thus failed to find any nonwork-related "causes," Martin argues that the decision should be rendered for him. Furthermore, Martin asserts that the Supplemental Findings comprise only a "pick and choose" extraction of selected bits and pieces of testimony from the Record, inaccurate, incomplete, and not fairly reflective of the evidence presented before the Board.

Monsanto responds that the Board has not overlooked the mandate of this Court, but rather Martin, himself, has overlooked the sole issue stipulated at the hearing before the Hearing Member, namely, whether the industrial accident of April 23, 1969, was the proximate cause of Martin's present back condition. In full compliance with this Court's Order, the Board's Certification of Specific Findings of Fact sets forth the findings and basic facts, as well as the conclusions of ultimate fact and the conclusions of law derived therefrom, required to facilitate an intelligent judicial review of the negative award in the present case.

*Decision*

CONCLUSION—It is our opinion that the additional findings of specific fact are sufficiently specific to proceed with this appeal on its merits.

The deficiency in the Board's Findings necessitating our Order of February 12, 1975, was the lack of specific or basic

findings relating to the contested issue of the causes of Martin's back affliction. By stipulation of the parties, *supra,* and by their conduct both at the hearing and on this appeal, the issue confronting the Board was whether or not Martin's back injuries were the proximate result of his accidental work-related *injury of April 23, 1969.* As Martin, himself, stated in his Appellant's Brief:

> "At the hearing, it was stipulated that the Appellant was injured in an industrial accident on April 23, 1969, which arose out [of] and in the course of his employment. All other essential facts to proof of a claim were stipulated *except causation and degree of impairment."* (Emphasis added.)

While the additional facts filed by the Industrial Board may not be in strict compliance with our Order [there being no specific finding of any "causes" of Martin's "back affliction" which were "wholly unrelated to the said employment with the defendant herein"], the findings do enumerate specific basic facts upon which the Board reached its determination that Martin failed to prove that the "accident" of April 23, 1969 was the proximate cause of his injuries, e.g., Martin only experienced a temporary back sprain, he continued to work, and his doctors described other medical problems unrelated to a back injury.

Remembering that review is sought from a negative[1] award, it is thus possible for us to determine "the basis of the decision." *Carlton* v. *Board of Zoning Appeals* (1969), 252 Ind. 56, 245 N.E.2d 337. For review of the authorities on this subject, see *Bohn Aluminum & Brass Co.* v. *Kinney* (1973), 155 Ind. App. 164, 291 N.E.2d 705; *Transport Motor Express, Inc.* v. *Smith* (1973), Ind. App., 289 N.E.2d 737; *Transport Motor Express, Inc.* v. *Smith* (1974), 262 Ind. 41, 311 N.E.2d 424.

---

1. *See Transport Motor Express, Inc.* v. *Smith* (1973), Ind. App., 289 N.E.2d 737, fn. 10 at pp. 745-746.

## ISSUE TWO

Martin poses Issue Two in this manner:

Is the award of the Board contrary to law?[2]

*Contentions*

Stressing that the parties stipulated all essential facts except causation and degree of impairment, Martin points to the testimony of Dr. Dingley as strongly supporting his right to an affirmative award. He asserts that he had no duty to negate any other possible cause for his disability and that this Court must not condone the Board's action in going outside the proof adduced by either party to speculate upon another possible cause for his back condition.

In response, Monsanto retorts that there was clearly sufficient evidence of probative value before the Board to satisfy the limited scrutiny this Court must apply to a negative award.

*Decision*

CONCLUSION—It is our opinion that the Board's decision was not contrary to law and it properly determined that Martin failed to sustain his burden of proof.

Martin seeks review of a negative award[3] and therefore is immediately confronted with this principle:

---

2. IC 1971, 22-3-4-8, Ind. Ann. Stat. § 40-1512 (Burns Code Ed.) states:

"An award by the full board shall be conclusive and binding as to all questions of [the] fact, but either party . . . may . . . appeal to the Appellate Court [Court of Appeals] for errors of law . . . .

\* \* \*

"An assignment of errors that the award of the full board is contrary to law shall be sufficient to present both *the sufficiency of the facts found to sustain the award and the sufficiency of the evidence to sustain the finding of facts.*" (Emphasis added.)

3. The Board's negative award in this case is supported by evidence, but a negative award may be supported by an absence of evidence. *See, Tichenor* v. *Bryant Lumber Co.* (1970), 147 Ind. App. 382, 261 N.E.2d 78; *Dooley* v. *Richard's Standard Service* (1969), 145 Ind. App. 470, 251 N.E.2d 449.

"A determination of a question of fact by the Industrial Board is conclusive if it is supported by any substantial evidence including reasonable inferences that may be drawn therefrom." *Russell* v. *Johnson* (1942), 220 Ind. 649, 660, 46 N.E.2d 219, 223.

*See also,*

> *Moore* v. *L. O. Gates Chevrolet, Inc.* (1967), 140 Ind. App. 672, 225 N.E.2d 854; *C. & E. Trucking Corp.* v. *Stahl* (1962), 135 Ind. App. 600, 181 N.E.2d 21; *Shaffer* v. *Indiana Gas & Chemical Corp.* (1965), 137 Ind. App. 471, 209 N.E.2d 919; IC 1971, 22-3-4-8, Ind. Ann. Stat. § 40-1512 (Burns Code Ed.); SMALL, WORKMEN'S COMPENSATION LAW, § 12.14, p. 415 (1950).

Furthermore,

> "On appeal, this Court can neither determine credibility of witnesses nor weigh the evidence heard by the Board to determine for whom it preponderates and we will not disturb the Board's Findings unless the evidence is undisputed and leads inescapably to a contrary result." *Motor Freight Corp.* v. *Jarvis* (1975), 163 Ind. App. 442, 448-49, 324 N.E.2d 500, 503 (and cases cited therein).

*See also,*

> *Tichenor* v. *Bryant Lumber Co.* (1970), 147 Ind. App. 382, 261 N.E.2d 78; *George* v. *Interstate Metal Products, Inc.* (1955), 125 Ind. App. 406, 126 N.E.2d 258.

In *Page* v. *Board of Commissioners of County of Clay* (1973), 155 Ind. App. 215, 292 N.E.2d 254, all the material facts were undisputed, except for the Board's finding that Page's traumatic neurosis was not proximately caused by the industrial accident—for which finding Page argued there was no evidentiary basis. In holding that the Board's finding was not fatally defective because it was founded on unsubstantial evidence to which no objection was interposed, this Court said:

> "Superficially Page's dissatisfaction with the finding is plausible. Bearing the burden of proof, he presented testi-

mony of two qualified physicians each of whom directly or indirectly concluded that his traumatic neurosis was a result of the accident. The Board then entertained, without objection, the letter from Dr. Russell who had examined Page five years after the accident [which stated that Page obviously had a psychological disorder, but it was not due to the January 4, 1966 accident], and it obviously relied on this hearsay statement in order to reach the conclusion that the neurosis was not caused by the accident." 155 Ind. App. at 221, 292 N.E.2d at 257.

Martin, like Page, invites us to weigh the evidence and the credibility of witnesses in reviewing the Board's negative award. But as in *Page*, "unless reasonable men could only reach a conclusion contrary to the Board's decision, we may not reverse." 155 Ind. App. at 222, 292 N.E.2d at 257. There was substantial evidence, both conflicting and uncontradicted, to support the Board's findings of fact and conclusions of law that Martin had not sustained his burden of proof, i.e., the Board believed the testimony of Dr. R. C. Stone and Ron Kettering, noted Martin's continued employment, and the inconsistencies between a work-related injury and the symptoms described in the testimony of Dr. Dingley.

Thus, the Board properly concluded from the evidence before it that Martin failed to prove a causal connection between the "accident" of April 23, 1969 and his injuries.

Martin also argues that the Board improperly considered an insurance form concerning the accident and Martin's Form 9 Application for Compensation (later amended prior to the hearing before the Single Hearing Member), both of which recited the date of his accidental injury as being May 9, 1969. Generally speaking the Board is not bound by the strict rules of evidence but even if it were, forms filed before the Board could contain evidentiary admissions:

"If they [the original pleadings] are the effective pleadings in the case, they have the standing of judicial admis-

sions, as noted previously. If a pleading, or allegation therein, is amended, withdrawn, or superseded by a substitute pleading, it ceases to be usable as a conclusive judicial admission, but is admissible in evidence in the case in which filed at the instance of the adversary as an evidentiary admission." (Citations and footnotes omitted.) McCORMICK, EVIDENCE § 265, p. 634 (2d ed. 1972).

*See also,*[3]

*Red 73 Creamery, Inc.* v. *Lumberman's Mutual Casualty Co.* (1965), 138 Ind. App. 273, 278, 209 N.E.2d 896; *Heeter* v. *Fleming* (1946), 116 Ind. App. 644, 648, 67 N.E.2d 317; *Chester* v. *American Trust & Savings Bank* (1923), 88 Ind. App. 105, 109, 141 N.E. 10; *Ager* v. *State* (1904), 162 Ind. 538, 542, 70 N.E. 808; *The Baltimore & Ohio & Chicago Railway Co.* v. *Evarts* (1887), 112 Ind. 533, 14 N.E. 369.

Consequently, forms filed by Martin in support of his claim were properly considered by the Board.

## ISSUE THREE

Did the Board err by admitting into evidence the pleadings from another lawsuit instigated by Martin and the deposition of Dr. Stone?

*Contentions*

Martin contends that the admission of pleadings from another unrelated lawsuit unduly prejudiced him by suggesting the possibility of his recovering the medical expenses for his injuries in the other suit.

Martin further argues that Dr. Stone's deposition was incorporated into the Record without being entered into evi-

---

3. For additional authorities supporting the admissibility of pleadings, following amendment or other alteration, *see*:

*Loren Specialty Mfg. Co.* v. *Clark Mfg. Co.* (D.C.Ill. 1965), 241 F.Supp. 493, 500, *affirmed* 360 F.2d 913, *cert. denied* 385 U.S. 957; *Fuhrer* v. *Fuhrer* (7th Cir. 1961), 292 F.2d 140, 144; *Borel* v. *United States Casualty Co.* (5th Cir. 1956), 233 F.2d 385, 388; *Nisbet* v. *Van Tuyl* (7th Cir. 1955), 224 F.2d 66, 71; *Annot.*, 52 A.L.R.2d 516.

dence and accordingly the Board erred in considering the deposition in determining its Award.

In response, Monsanto retorts that by not objecting to the admission of the pleadings into evidence on the grounds that they were prejudicial, as he now argues, Martin has waived his right to appeal this issue. As to Dr. Stone's deposition, Monsanto argues that Martin again failed to object to the taking of the deposition and its entry into the record for the Board's consideration. Indeed, Martin's counsel went to, participated in, and made a record in the deposition. This, too, constitutes a waiver.

*Decision*

CONCLUSION—It is our opinion that questions relating to the admission of the unrelated pleadings and the admission of Dr. Stone's deposition have been waived by Martin.

Overlooking the failure of Martin's brief to comply with AP. 8.3(7) as to this issue, it is apparent from the record that:

(1) Martin waived any objection to the admissibility of the pleadings by failing to object to their introduction on the grounds of prejudice before the Board. *Frazier* v. *Whited* (1938), 106 Ind. App. 57, 16 N.E.2d 974;

(2) Dr. Stone's deposition was properly filed with the Board and Martin, through his counsel, clearly agreed to its submission.

The decision of the Board is therefore affirmed.

White, J., concurs, Sullivan, P.J., concurs in result only.

NOTE.—Reported at 333 N.E.2d 828.