Eva Maria **RUNDEL**, Appellant (Plaintiff Below),

v.

Bruce Eugene **SHADY**, Appellee (Defendant Below).

No. 4–885A230.

Court of Appeals of Indiana, Fourth District.

May 12, 1986.

Howard F. Hanson, Jr., Romero & Thonert, Fort Wayne, for appellant.

Michael A. Aspy, Tourkow, Crell, Rosenblatt & Johnston, Fort Wayne, for appellee.

MILLER, Judge.

Eva Rundel appeals the judgment granting her petition to establish paternity of her minor daughter, A.J.S., against Bruce Shady. Rundel along with Shady filed a joint petition in June of 1982 requesting Shady be named the father of the child. Some two years and eight months later when the cause was set for hearing at the request of Shady, Rundel expressed doubts as to the paternity and requested blood tests. The referee denied her request and granted Shady's motion for judgment on the pleadings which established him as A.J. S.'s father. Rundel appeals, alleging the referee erred in not granting her motion for blood tests.

We affirm.

## FACTS

On June 11, 1982, Rundel and Shady filed a joint, verified petition to establish paternity against Shady.[1] The petition included a request that the court enter a finding that Shady was the father of A.J.S. and a sworn, signed, and notarized statement by Shady admitting and acknowledging he was the father of the child. For some unexplained reason, the record indicates no ruling was made or action taken until two years and eight months later, on February 12, 1985 when Shady requested that the court take action and declare him to be the father. On April 3, 1985, Rundel filed a response alleging she had discovered Shady might be sterile and unable to father a child. She stated there was a strong possibility another person "may well indeed have been the father" of A.J.S., and she "is indeed most anxious to firmly establish" whether Shady "was indeed or was not indeed the natural father of the child." Record, p. 22. Accompanying this response was a request for blood tests pursuant to IND.CODE 31-6-6.1-8(a) (Supp. 1985). which states, "Upon the motion of any party, the court shall order all of the parties to the action to undergo blood testing."

On April 12, 1985, both parties appeared at a hearing at which the referee offered Rundel, who appeared pro se, a continuance which she declined. The referee found that Shady admitted to being the father and that Rundel's request for blood tests was therefore not supported by the pleadings. The referee granted Shady's motion for judgment on the pleadings and found that Shady was the father of the

1. IND.CODE 31-6-6.1-2 (Supp.1985). This statute provides in part, "A paternity action may be filed by the following persons: ... (3) The mother and a man alleging that he is her child's biological father, ... filing jointly." *Id.* (a)(3).

child. Rundel appeals, alleging the referee erred in failing to grant her request for blood tests.

## DECISION

■ We note at the outset the welfare of the child is paramount in a paternity action, and the purpose of the statutes is to promote the welfare of the child. *O.S. v. J.M.* (1982), Ind.App., 436 N.E.2d 871. Specifically, the primary purpose of a paternity action is to secure support and education for the illegitimate child, and a subsidiary goal is to protect the public interest by preventing the illegitimate child from becoming a ward of the state. *Allee v. State* (1984), Ind.App., 462 N.E.2d 1074; *D.R.S. v. R.S.H.* (1980), Ind.App., 412 N.E.2d 1257.

■ We also note that paternity proceedings are considered civil in nature, and therefore are governed by the rules of trial procedure. I.C. 31–6–6.1–19 ("The Indiana rules of civil procedure shall apply in paternity actions.") *See also Crayne v. M.K. R.L.* (1980), Ind.App., 413 N.E.2d 311. The statute requires each petition for paternity to be verified. I.C. 31–6–6.1–5. In turn, the Indiana rules of trial procedure explain that a verification is an affirmation of the truth of the matter to be verified. Ind. Rules of Trial Procedure, Trial Rule 11(B). Thus, by verifying the joint petition, Rundel was affirming the truth of her assertion that Shady was the father of her child.

■ Not only did she affirm the truth of her assertion concerning the father of her daughter, but Rundel's paternity petition is also a judicial admission. As our court noted in *Martin v. Monsanto Co.* (1975) 166 Ind.App. 5, 16–17, 333 N.E.2d 828, 834:

" 'If they [the original pleadings] are the effective pleadings in the case, they have the standing of judicial admissions.... If a pleading, or allegation therein, is amended, withdrawn, or superseded by a substitute pleading, it ceases to be usable as a conclusive judicial admission, but is admissible in evidence in the case in which filed....' "

(quoting McCormick, *Evidence* Sec. 265, p. 634 (2d ed. 1972). The evidentiary effect of a judicial admission is as follows:

"[A] fact admitted by the plea or answer must be taken as true.... An admission in a plea or answer is binding on the party making it; such an admission is a conclusive or judicial admission, and is not merely evidence. The admission is conclusive as to the admitted fact, and no evidence may be shown to contradict it."

71 C.J.S. *Pleading* Sec. 160(c) (1951) (footnotes omitted). *See also Zaring v. Lodge* (1944), 114 Ind.App. 490, 52 N.E.2d 632. Thus, Rundel's verified petition—which was not amended, withdrawn, or superseded by a subsequent pleading—alleging Shady was the father of her child was binding on her, was conclusive as to the admitted facts, and she could not have introduced any evidence at the hearing to contradict it.

Against the backdrop of the conclusive effect of Rundel's and for that matter, Shady's judicial admissions, we must now examine the language of I.C. 31–6–6.1–8, that "[u]pon the motion of any party, the court shall order all of the parties to the action to undergo blood testing." At first glance, the statutory language would indicate the legislature intended to permit any party—including the mother or alleged father—in any proceeding to move for blood tests, and the court would be required to order the tests by virtue of the mandatory language. The statute further provides, however, the results of the test "constitute conclusive evidence if the results and finding exclude a party as the biological father of the child." I.C. 31–6–6.1–8(b). In a situation where paternity is admitted by the parties and the blood test results are negative, the trial court would be in the awkward position of having contradictory conclusive evidence: the petition and admission of paternity being a conclusive judicial admission of paternity and the negative blood test results being conclusive evidence the named party is not the father of the child. Such an illogical and impossible result could not have been the intent of the legislature, and in interpreting statutes, our court will not presume that the legislature expected a statute to be applied in an

illogical and absurd manner. *In re Marriage of Lopp* (1978), 268 Ind. 690, 378 N.E.2d 414.

■ The purpose of the blood test is to determine paternity. Where paternity is conclusively admitted by the pleadings, the purpose of the blood test has been fulfilled. Therefore, we conclude the provision of the statute that requires blood tests to be performed is applicable only in adversarial settings.

Here, the case was presented to the referee on a joint petition for paternity. Rundel did not attempt to amend or withdraw her petition, and therefore the court was correct in granting a judgment on the pleadings.

Judgment of the trial court is affirmed.

YOUNG, P.J., and CONOVER, J., concur.