ZEARING *v.* WALTERS.

[No. 18,554. Filed November 24, 1954. Rehearing denied January 24, 1955.]

*Paul R. Schnaitter* and *Harold E. Ford,* both of Madison, for appellant.

*Cooper, Cooper, Cooper & Cox,* of Madison, for appellee.

CRUMPACKER, J.—The appellee sued the appellant for services rendered and recovered judgment in the sum of $2,000. Her action is in *quantum meruit.* and was tried on the theory that the circumstances under which such services were rendered and accepted implies a contractual obligation on the part of the appellant to pay her the reasonable value thereof. The appellant contends that the trial produced no evidence that will support a recovery on that theory or any other.

We are indebted to the appellant for a resumé of the facts most favorable to the appellee which, being unchallenged, we adopt and quote:

"The appellant, Harvey J. Zearing, and his wife, Capitola Zearing, had both been previously married and had children by their former marriages. One of

these children was Harold Walters who was about 12 years of age at the time his mother married the appellant. He was a member of appellant's household until sometime before he married the appellee, Stella Walters. Prior to July 1943, Capitola Zearing was residing on East Street in the City of Madison, Indiana, and her husband, the appellant, Harvey J. Zearing, seems to have been estranged from her at the time. Harold Walters and the appellee were married October 9, 1942 and shortly after their marriage began to come to the Zearing residence, almost every evening. At this time the appellant was not living at the home. These visits continued after the appellant returned to the home in July, 1943 and resumed living with his wife, Capitola Zearing. The appellee and her husband maintained a separate household but went to the Zearing home frequently. The appellee went there not only in the evening but as Mrs. Zearing's health became worse often went to the home in the daytime. The appellee helped Mrs. Zearing clean house, washed woodwork, did some papering, some painting, cooked meals at the Zearing house and washed dishes. Mrs. Zearing had an operation February 2, 1949, and was in the hospital approximately two weeks. During this period the appellee was at the Zearing home 'most' every day, all day, and at this time cooked Mr. Zearing's meals. It also seems that over some period of time, the exact amount of which is not revealed, appellee shaved Mr. Zearing, cut his hair and helped him to the table and bath room. Mrs. Zearing died November 14, 1950, and the plaintiff was at the Zearing house at least a part of the time for two weeks after Mrs. Zearing died.

"The record does not show that Mrs. Walters was requested, either by appellant, or Capitola Zearing, his wife, to render any services whatever. The record does show that appellee never had a conversation of any kind with the appellant in which he requested her to perform any services, nor does it appear that appellant's wife ever requested appellee to perform any services. The record affirmatively shows appellee never had any conversation with the appellant, either before,

during, or after the services were rendered, in which payment was mentioned by either of them, nor was there ever any conversation between them indicating that the services which were rendered were understood by either of them to be services for which payment would ordinarily be made by persons similarly situated. The record affirmatively shows that appellee kept no record whatever during the entire eight year period of what services she performed or the time involved in the performance of these services. The appellee testified as a witness in her own behalf and frankly stated on the witness stand that she did not keep track of the days she worked and could not tell the court how many days she worked at the Zearing home. After the death of Mrs. Zearing the appellee did discuss future arrangements with the appellant and offered to take care of him the rest of his life if he would convey the house on East Street to her. The appellant declined to enter into an arrangement of this kind, but informed the appellant that the property ought to go to his, the appellant's children."

To this we add the fact that the appellant's own children seemed indifferent to his welfare and did very little to aid and comfort him during the period involved.

Ordinarily it may be said that where one accepts and retains the beneficial results of another's services, the law will imply a previous request for such services and a promise to pay for them. *Chamness* v. *Cox* (1891), 2 Ind. App. 485, 28 N. E. 777; *Estate of Reeves* v. *Moore* (1892), 4 Ind. App. 492, 31 N. E. 44; *Rhodes* v. *Matthews* (1879), 67 Ind. 131.

This implication of presumption, however, may be rebutted by evidence that the circumstances under which the services were rendered and accepted were such as to exclude the idea that the parties were dealing on the basis of a contract. *Chamness* v. *Cox, supra.* To this effect is that group of cases

where a family relationship exists between the parties in which it is generally held that the fact that the services were voluntarily rendered without express contract while the parties were members of a family living together as a household, rebuts the presumption or implication that compensation was intended for accepted services and raises a presumption that they were gratuitous. *Wainwright Trust Co., Admr.* v. *Kinder* (1918), 69 Ind. App. 88, 120 N. E. 419; *Witt* v. *Witt, Executrix* (1938), 105 Ind. App. 415, 12 N. E. 2d 1013.

Appellant contends, *inter alia,* that the present case is governed by the family relationship doctrine and that the record is devoid of evidence tending to rebut the presumption that the services for which the appellee now seeks to recover were performed gratuitously. The appellee, on the other hand, insists that the family relationship doctrine has no application. That the appellant is her stepfather-in-law from whom she has no right or expectation of inheritance. *Kirklin* v. *Clark* (1913), 53 Ind. App. 358, 101 N. E. 753. That she maintains a home of her own in which she lived during all the period of the services involved and has never been a member of the appellant's household or of his immediate family. Therefore, she says, she stands in the relation of a stranger to the appellant and having performed services which the appellant accepted and by which he benefited, the law presumes an obligation on his part to pay her the reasonable value thereof. That under the facts of this case, proof of services voluntarily rendered and voluntarily accepted, together with the presumption the law supplies, is sufficient to sustain the court's finding.

We agree with the appellee that this case does not fall within the family relationship doctrine. We have

found no decision where that doctrine has been extended to include a stepdaughter-in-law who was not and never had been a member of the recipient's household and under no duty, legal or moral, to perform the services involved. We approach our decision, therefore, bound by the conclusion that we can indulge no presumption that the appellee's services were gratuitous. We further have in mind that the facts make no case for the appellee except as aided by the legal implication or presumption that the services sued for were rendered under a promise that they would be paid for. This presumption, however, is not evidence, as there is no presumption of fact recognized by the law of this state. *Kaiser* v. *Happel* (1941), 219 Ind. 28, 36 N. E. 2d 784; *Baltimore & Ohio R. Co.* v. *Reyher, Admx.* (1940), 216 Ind. 545, 24 N. E. 2d 284; *Munson* v. *Quinn* (1942), 110 Ind. App. 277, 37 N. E. 2d 693. It seems safe to say that a presumption of law as applied to an established set of facts merely determines the probative value which the law attaches to such facts and, unless the presumption involved is made conclusive by law, it recedes in the face of evidence to the contrary.

It is settled in this state that where services are voluntarily rendered by one person to another with no expectation, at the time the services are rendered, to charge therefor, such services cannot afterwards be used as a basis of an implied promise to pay. *Stant, Gdn.* v. *Lamberson* (1937), 103 Ind. App. 411, 8 N. E. 2d 115; *Hans* v. *Hollowell, Admx.* (1938), 104 Ind. App. 602, 12 N. E. 2d 364. The undisputed evidence forces us to the conclusion that such is the fact in the present case. The appellee worked for eight years without once making a demand for the payment of any part of her services nor did she,

on any occasion during all of that time, intimate to anyone, including the appellant, that she expected to be paid for her services. At no time, during the period covered by her claim, did she seek any understanding with the appellant as to its adjustment or have any conversation with him on the subject. She kept no account of the time she worked or the nature of the services performed. Shortly after the appellant's wife died she talked to him, for the first time, concerning the subject of compensation and offered to take care of him for the rest of his life if he would convey the house in which he lived to her, but said nothing whatever about pay for past services or gave any intimation whatever that she then considered the appellant indebted to her. We find nothing in this record to support an implied promise to pay except the bare fact that the appellee did the work and the appellant accepted its benefits. We are forced to the conclusion that the presumption of a contract which the law ordinarily implies in such a situation is wholly overcome by the undisputed facts and their inferences.

Judgment reversed and cause remanded with instructions to sustain appellant's motion for a new trial.

Royse, P. J., not participating.

NOTE.—Reported in 122 N. E. 2d 625.