Wilson and Betty SILVERTHORNE, Appellants (Plaintiffs and Counter-Defendants below),

v.

James KING, Appellee (Defendant and Counter-Plaintiff below).

No. 3–478A80.

Court of Appeals of Indiana, Third District.

Feb. 5, 1979.

Samuel J. Goodman, Joseph S. Van Bokkelen, Goldsmith, Goodman, Ball & Van Bokkelen, Highland, for appellants.

Walter J. Alvarez, Merrillville, for appellee.

HOFFMAN, Judge.

This appeal arises from an action filed in the small claims division of Lake County Court by plaintiffs-appellants Wilson and Betty Silverthorne against defendant-appellee James King. Appellants claim they mistakenly deposited $577.70 in appellee's checking account in the Calumet National Bank. King filed a counterclaim for $714 alleging that he performed labor for the Silverthornes for which he received no compensation. Following a trial to the court, the court granted judgment in favor of the Silverthornes on their complaint in the amount of $577.70 and also granted judgment in favor of King on his counterclaim, also in the amount of $577.70. The Silverthornes filed a motion to correct errors which the trial court denied.

Although a request for a court reporter was made, no reporter was present and no evidence was recorded. Appellants therefore submitted to the court a "Statement of the Evidence" pursuant to Ind.Rules of Procedure, Appellate Rule 7.2(A)(3)(c). The record shows that said statement was served on appellee who made no objection or response thereto. The trial court found that the statement of the evidence was incorrect and refused to accept or settle the same. Appellants then filed a motion requesting the court to correct the transcript of proceedings at trial and approve or settle the same. The court, in its certificate, stated:

> "Plaintiffs-counter-defendants then submitted a Motion that the Court, pursuant to Appellate Rule 7.2(A)(4), that the Court correct such statement of evidence. The undersigned does now make such corrections as shown and attaches his original bench notes (H.I.) and does now certify the same to be full, true, correct and complete . . . ."

Appellants argue in their brief on appeal that the trial court erred in submitting its trial notes and that the judgment of $577.70 in favor of appellee on his counterclaim for $714 was not supported by the evidence and was thus contrary to law.

■ Appellee failed to file any brief in support of the judgment rendered in his favor or in opposition to the judgment rendered in appellants' favor. Where no brief is filed by the appellee the judgment may be reversed if the appellants' brief presents a prima facie case of error. *Young et al. v. Schreiner* (1959), 130 Ind.App. 39, at 40, 161

N.E.2d 611, at 612. This rule exists to relieve the Supreme or Appellate Court of the burden of controverting the arguments and contentions advanced by appellant for reversal where such duty properly lies with counsel for the appellee. *Sunn v. Martin* (1959), 130 Ind.App. 29, 161 N.E.2d 487. But whether the rule shall be invoked is discretionary with the court. *Jordan v. Johnson* (1965), 138 Ind.App. 53, at 56, 211 N.E.2d 623, at 625. Due to the nature of the errors of the trial court herein, this case will be decided on its merits. *Ralston v. Ryan* (1940), 217 Ind. 482, 29 N.E.2d 202.

■ Before considering the appellants' argument concerning the trial court's submission of its bench notes as a part of the record, a review of the procedures involved where there is no transcription of evidence would be helpful. Ind.Rules of Procedure, Appellate Rule 7.2(A)(3)(c) provides as follows:

"(c) Statement of the Evidence or Proceedings when no Report was made or when the Transcript is Unavailable. If no report of all or part of the evidence or proceedings at the hearing or trial was or is being made, or if a transcript is unavailable, a party may prepare a statement of the evidence or proceedings from the best available means, including his recollection. If submitted contemporaneously with the matter complained of, the statement may be settled and approved by the trial court. If submitted thereafter, the statement shall be served on other parties who may serve objections or prepare amendments thereto within ten (10) days after service. The statement and any objections or prepared amendments shall be submitted to the trial court for settlement and approval and as settled and approved shall become a part of the record and be included by the clerk of the trial court in the record.

If statements or conduct of the trial judge are in controversy, the statement shall be supported by sworn affidavit which shall be submitted to the trial judge for his certification. If he refuses to certify the statement he shall file opposing affidavits. All such affidavits shall be included in the record by the clerk of the trial court."

In the absence of a transcription of the evidence at trial, appellants properly submitted a statement of the evidence to the trial court and served the same upon appellee. Appellee filed no objections to the same as he was entitled to do under AP. 7.2(A)(3)(c).

Although the trial court refused to certify the statement, *"statements or conduct of the trial judge"* were not in controversy so that AP. 7.2(A)(3)(c) was not applicable. But AP. 7.2(A)(4) is applicable. It reads as follows:

"(4) The transcript of the proceedings at the trial, including all papers, objections and other matters referred to above shall be presented to the judge who presided at the trial, who shall examine the same if not true, correct the same without delay, and as finally settled by the court, shall sign the same, certifying to the same as being true and correct in said proceedings, and order the same filed and made a part of the record in the clerk's office."

Pursuant to this provision the trial court had a duty to correct the inaccuracies and settle the record. The certificate of the trial court states that the statement of the evidence was corrected. This case shall therefore be reviewed on the basis of that statement of the evidence.

■ The trial court submitted four pages of "original Bench notes" as a part of its certification of the transcript. These pages, handwritten notes apparently taken at trial, were in part illegible and because of the abbreviated form, i. e., not complete sentences, in which they were written, the meaning of the phrases left much to the imagination. Original bench notes do not meet the requirements of AP. 7.2(A)(4).

The Rules of Procedure do not contemplate requiring this Court to decipher illegible scribbles and to attempt to elicit some understanding of a trial therefrom. *See: Nodinger et al. v. City of Hammond etc. et al.* (1965), 137 Ind.App. 324, at 327, 208 N.E.2d 198, at 200. These notes are mere surplusage and will not be considered by this Court in our review of this appeal.[1]

The evidence, as presented in Silverthornes' statement of the evidence, shows that King rented a house from the Silverthornes. On May 8, 1975, Betty Silverthorne went to Calumet National Bank to deposit checks in her checking account, among which was a rent check from King. Mrs. Silverthorne had no precoded deposit slips so she used a blank deposit slip and by mistake used the account number on King's check. Thus, $577.70 was mistakenly deposited in King's checking account. King thereafter withdrew all the money from his checking account and moved his family to Kentucky. He apparently was aware of the fact that there was more money in his account than his records indicated should have been, but the bank told him the amount was correct according to its records. When the mistake was discovered by the Silverthornes, with the help of the bank, the bank sent a letter to King asking him to return the money to the Silverthornes. King did not return the money pursuant to the request.

When King moved back to Indiana in April of 1976 and was confronted by the Silverthornes concerning the $577.70, King acknowledged that he had received the extra money and promised to repay it when he sold a trailer he owned. The money was never repaid.

The evidence shows that the work King allegedly performed for the Silverthornes was done in the summer and fall of 1974. King never asked for any payment and there was no agreement or understanding that he would be paid. The kind and amount of labor he performed is unclear. He apparently took care of the Silver-

thornes' animals while they were on vacation and once took Mr. Silverthorne to the doctor's office. The evidence is that King allegedly helped once with a septic tank and butchering some hogs. There is a conflict in the evidence as to whether King volunteered to help or whether the Silverthornes requested his aid. The evidence also shows that King had a complete and permanent disability, a severe back problem, which prevented him from working. This disability would have made strenuous work on the septic tank impossible. The first time the Silverthornes learned of King's claim for payment for labor allegedly performed in 1974 was three years after the fact at the time the counterclaim was filed.

■ Appellants argue that this evidence is insufficient as a matter of law to support the judgment rendered in favor of King because there was no contract or implied agreement to pay for any labor King performed. The law in Indiana is that where one accepts valuable services from another the law implies a promise to pay for them. To warrant a finding of an implied contract the elements of intention to pay and expectation of payment must be found to exist. *Wilhoite v. Beck* (1967), 141 Ind.App. 543, at 549, 230 N.E.2d 616, at 620. The inference may be drawn from the relation and situation of the parties, the nature and character of the services rendered, and any other facts and circumstances shedding light on the question at issue. *Ellis et al. v. Haines* (1963), 134 Ind.App. 528, at 535, 188 N.E.2d 835, at 839.

■ In *Zearing v. Walters* (1954), 125 Ind.App. 202, at 207, 122 N.E.2d 625, at 628, the Court held that where services are voluntarily rendered by one person to another with no expectation, at the time services are rendered, to charge therefor, such services cannot afterwards be used as a basis of an implied promise to pay. There, as in the case at bar, appellee made no demand for payment and intimated to no one, including appellants, that any compensation was an-

1. Inasmuch as the court did certify the statement of the evidence submitted by appellants, this appeal can be reviewed adequately by relying upon that statement.

ticipated. While the law implies an agreement to pay for services rendered, the implication may be rebutted by evidence that the circumstances under which the services were rendered and accepted were such as to exclude the idea that the parties were dealing on the basis of a contract.

In the case at bar a portion of the labor performed was of the nature of something one neighbor might do gratuitously for another and the remaining labor was so vaguely described that it would be impossible to place any value upon it. But of determinative importance is the fact that the evidence does not show any intention to pay for the labor on the part of appellants or any expectation of compensation on the part of appellee. And it is for that reason that the judgment in favor of appellee must be reversed.

The judgment in favor of appellee King is reversed. The judgment in favor of appellants is affirmed. The trial court is ordered to enter judgment in conformity with this opinion.

Reversed in part and affirmed in part.

STATON, J., concurs.

GARRARD, P. J., concurs with opinion.

GARRARD, Presiding Judge, concurring.

I concur in affirming the judgment for appellants. I also concur in reversing the judgment for the appellee because the *materials constituting the transcript* disclose no evidence which would support the court's finding for the appellee. While that is implicit in the majority opinion, it should be clear that this court is not reweighing the evidence.