Lucille MAYBERRY, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 26A04–9205–CR–159.

Court of Appeals of Indiana,
Fourth District.

Dec. 30, 1992.

Transfer Denied Feb. 17, 1993.

Ray M. Druley, Fort Branch, for appellant-defendant.

Linley E. Pearson, Atty. Gen., Deana M. McIntire, Deputy Atty. Gen., Indianapolis, for appellee-plaintiff.

CONOVER, Judge.

Defendant–Appellant Lucille Mayberry appeals her conviction for forgery, a class C felony. IND.CODE 35–43–5–2.

We affirm.

Mayberry presents two issues for our review:

1. whether the trial court erred in admitting evidence of approximately twenty forged checks made out to her; and

2. whether her sentence is manifestly unreasonable.

Thelma Myers, age 85, and Lucille Mayberry, age 66, live in the same apartment complex in Haubstadt, Indiana. Mayberry helped Myers with household chores such as bringing in the mail, giving her baths, and other chores. In September, 1992, Mayberry cashed a $50 check drawn on Myers' account at a store. When the check went through Myers' bank, an employee, who was familiar with Myers, noticed the account was overdrawn and the signature on the check was different from the signature on the bank card. She alerted the police.

When the police interviewed Mayberry, she stated Myers had written the check in question and asked her to cash it just as she had done several times previously. She contended after she cashed it, she had given the money to Myers. While at her apartment, the police found in the bathtub a deposit envelope addressed to Myers' bank with a sticky note reading "overdrawn $108.71." She admitted she hid the

envelope there so she would not appear to be guilty.

The State charged Mayberry with forgery. After a lengthy discussion at trial, the court permitted the State to introduce twenty-two allegedly forged checks drawn on Myers' account to show a common scheme or plan. Mayberry objected. The State presented to the jury testimony to show: 1) twenty-one of these checks were made out to Mayberry for amounts from $25 to $250; 2) the signatures on the checks were not that of Myers; 3) Myers denied writing the checks; 4) none of the checks written to Mayberry had been recorded in the check register; 5) Myers' check register showed a balance of approximately $12,000 when in fact she was overdrawn on the account; and 6) Mayberry had cashed the checks. The jury found Mayberry guilty as charged. The court sentenced her to seven years. She appeals.

Mayberry first contends the trial court erred in admitting, over objection, evidence of the additional forged checks. She argues the court erred in ruling the uncharged misconduct proved a common scheme or plan. Further, she claims it was unfair to charge her with one count of forgery and then require her to defend against twenty-two other allegations of forgery.

■ Evidence of crimes extrinsic to the crime for which the defendant is on trial is generally inadmissible. *Gibbs v. State* (1989), Ind., 538 N.E.2d 937, 939. However, there are certain exceptions to this general rule such as evidence which promotes an inference about the defendant's intent, motive, purpose, identity, or common scheme or plan. *Williams v. State* (1986), Ind., 489 N.E.2d 53, 55. The trial court has broad discretion in ruling upon the relevance of such evidence. *Clarkson v. State* (1985), Ind., 486 N.E.2d 501, 506. Evidence of uncharged misconduct may be admissible if it promotes a legitimate inference about some issue in the cause, notwithstanding its incidental revelations of bad character or criminal propensity. *Bedgood v. State* (1985), Ind., 477 N.E.2d 869, 872–873. However, because the admission of prior crimes can taint the fairness of the trial, the exception must be cautiously applied. *Clark v. State* (1989), Ind., 536 N.E.2d 493, 494.

■ Admission of evidence for extrinsic offenses which is used to show a common plan or scheme has been permitted for two purposes: 1) to show a preconceived plan that includes the charged crime, and 2) to prove intent, motive, purpose or identity by showing the defendant committed other crimes with identical *modus operandi*. *Lannan v. State* (1992), Ind., 600 N.E.2d 1334; *Gibbs*, 538 N.E.2d at 939.

■ To prove a preconceived plan, the extrinsic offenses are admissible only if the charged crime and the extrinsic crimes are so related in character, time, and place of commission as to establish some plan which embraced both the prior criminal activity and the charged crime. *Malone v. State* (1982), Ind., 441 N.E.2d 1339, 1345. The uncharged crimes must be tangibly connected to the one for which the defendant is on trial. *Johnson v. State* (1989), Ind. App., 544 N.E.2d 164, 170, *trans. denied.*

In forgery cases, evidence of other checks drawn shortly before or shortly after the charged crime and cashed in the same locale has been admitted to prove a preconceived plan or scheme. *Vanway v. State* (1989), Ind., 541 N.E.2d 523, 527; *Boney v. State* (1986), Ind.App., 498 N.E.2d 67, 69; *Cooper v. State* (1923), 193 Ind. 144, 139 N.E. 184, 185.

■ In the instant case, the evidence of the other forged checks could only be properly admitted if it tended to prove a disputed fact in issue. *See Street v. State* (1991), Ind.App., 567 N.E.2d 1180, 1185. The State charged Mayberry with one count of forgery for the $50 check. Thus, the State was required to prove Mayberry's intent to defraud Myers. IC 35–43–5–2; *Eifler v. State* (1991), Ind.App., 570 N.E.2d 70, 77, *trans. denied.* Mayberry denied she intended to defraud Myers. She told the police she worked for Myers. She claimed Myers had written her the check and had received the money. Myers stated Mayberry never worked for her and denied she had

written the check to Myers. Her testimony, however, was rambling and confused, raising the inference the elderly victim's memory was faulty. As evidence of a common plan or scheme on the part of Mayberry to defraud Myers, the State offered the twenty-two forged checks drawn on Myers' account. Twenty-one of the checks were made payable to Mayberry. They were all dated approximately two weeks apart and none were recorded in Myers' checkbook register, as noted. The other checks are tangibly related in character, time, and place of commission to the crime charged and demonstrate a pattern which supports a reasonable inference Mayberry had a preconceived plan to defraud Myers of her savings. The probative value of this evidence outweighs its prejudicial effect. Therefore, the trial court did not err in admitting the other checks into evidence.

▆▆▆ Mayberry contends her seven year sentence was manifestly unreasonable because the mitigating factors outweigh the aggravating factors. The determination of a sentence rests with the discretion of the trial court. *Duvall v. State* (1989), Ind., 540 N.E.2d 34, 36. An appellate court will not alter a sentence authorized by statute unless the sentence is manifestly unreasonable in light of the offender and the offense. *Durbin v. State* (1989), Ind.App., 547 N.E.2d 1096, 1100. A sentence is not manifestly unreasonable unless no reasonable person could consider the sentence appropriate. *Reichard v. State* (1987), Ind., 510 N.E.2d 163, 167.

The trial court set out a statement of the mitigating and aggravating factors in this case. IC 35-38-1-3. In aggravation, the court found the age of victim (85 years old), the lack of remorse of the defendant, defendant's varying accounts of events, the pattern of conduct by which defendant took

several thousand dollars of the victim's savings, and the harassing phone calls made to the victim. In mitigation, the court considered the defendant's age, health problems, and absence of prior convictions.

▆▆▆ The presumptive sentence for a class C felony is four years, with not more than four years added for aggravating circumstances. IC 35-50-2-6. The trial court enhanced the presumptive sentence by three years, which is within statutory limits. To enhance a sentence, the trial court need only to state one aggravating factor. *Duvall*, 540 N.E.2d at 36. A trial court properly may consider evidence of prior criminal conduct which has not been reduced to conviction and evidence of prior uncharged crimes. *Hensley v. State* (1991), Ind.App., 573 N.E.2d 913, 917, *trans. denied.* While Mayberry may feel the mitigating factors entitle her to a shorter sentence, we do not find the sentence manifestly unreasonable in light of the legitimate aggravating factors. The trial court court did not abuse its discretion in sentencing Mayberry.

Affirmed.

SULLIVAN, J., concurs in result with separate opinion.

MILLER, J., concurs in part and dissents in part with separate opinion.

MILLER, Judge, concurring in part and dissenting in part.

When a trial court sentences a sixty-six (66) year-old, widowed, great-grandmother, who is a first time offender to almost the maximum prison sentence allowed by statute (eight years is the maximum) for the conviction of a non-violent crime, the sentence warrants close scrutiny.[1] I wish to

---

1. Ind. Appellate Rule 17 allows our court to revise a sentence that is "manifestly unreasonable in light of the nature of the offense and the character of the offender." A sentence is manifestly unreasonable, and hence eligible for revision if *"no* reasonable person could find the sentence appropriate to the particular offense and offender for which such sentence was imposed." *Id.* (emphasis added). Despite this

strict standard, our divided supreme court has had occasion to revise a defendant's sentence. *Harrington v. State* (1992), Ind., 584 N.E.2d 558, (J. Givan dissenting); *Wilson v. State* (1992), Ind., 583 N.E.2d 742, (J. Givan dissenting). *Wilson* demonstrates that even if a trial judge, three court of appeals judges, and one supreme court justice would uphold a defendant's sentence, four supreme court justices can find the sen-

point out that in addition to there being no evidence or logic to support several of the aggravating factors cited by the trial court, there is at least another side to this story— one which reveals a very important mitigating factor which the trial court ignored, that is, the fact that Lucille provided valuable services for Thelma of which Thelma was in dire need. Given the nature of the offense, the offender, and the victim, I would find Lucille's seven-year (7) sentence for forging a $50.00 check to be manifestly unreasonable.

It is important to note that, in addition to the above, Lucille worked as a visiting nurse. It was well established in the trial testimony, a published deposition, and Lucille's Pre–Sentence Investigation Report, that Lucille performed many necessary and valuable services for Thelma. For a year, Lucille checked in on Thelma almost daily when bringing Thelma her mail. Lucille would also bathe Thelma, clean her apartment, pick up groceries occasionally, and perform errands. In light of the services Lucille performed for Thelma, the evidence used in Lucille's trial takes on a new hue. Of the twenty (20) checks admitted into evidence for the purpose of demonstrating a common scheme or plan to defraud Thelma, nineteen (19) checks were payable to

the order of Lucille and one in the amount of two hundred dollars ($200.00) was payable to Meny's, a local grocery store. The nineteen checks payable to Lucille spanned a time period of one year and totalled $2,750.00. This divides into about $52.00 a week—a reasonable amount of compensation for the services Lucille performed.[2]

Even working as a visiting nurse did not keep Lucille from being a member of an unfortunate growing class of older working poor. The record indicates that Lucille qualifies for some type of low cost housing ($33.00 a month). Added to this is the fact that Lucille has high blood pressure, and may not be in good health. Lucille's seven year sentence should be revised based on the nature of "the offender" alone. Sadly, there is more to the story.

Thelma was elderly and feeble of body and mind. She had great difficulty walking into the courtroom—even with the aid of a walker. She was unable to climb one step in order to get into the witness chair, and as a result testified from a chair in front of the jury. Clearly, Thelma was incapable of taking care of herself and required the assistance of another. There is no indication that Thelma had any relatives who could care for her.

tence to be manifestly unreasonable. In reality, the standard boils down to the fact that if a majority of the reviewing court deems a defendant's sentence to be manifestly unreasonable, it is unreasonable, irrespective of the disposition below. I merely point this out to illustrate that the "no reasonable person test" of the manifestly unreasonable standard is not applied literally. Instead, the standard set by the supreme court allows the majority of a reviewing court to examine the circumstances of a given case and determine if the sentence is unduly harsh given the background of the offender and the offense.

2. It is interesting to note how our civil law would have dealt with the flip side of this situation. If Thelma received Lucille's services but did not compensate her, Lucille could seek recovery from Thelma under the theory of quantum meruit. A party seeking to recover under a theory of quasi contract or quantum meruit must demonstrate that a benefit was rendered to the other party at the express or implied request of such other party under circumstances in which equity should demand compensation in order to prevent unjust enrichment. *Kody Engineering v. Fox Insurance Agency* (1973), 158

Ind.App. 498, 303 N.E.2d 307. "Where one accepts valuable services from another, the law implies a promise to pay for them. To warrant a finding of an implied contract the elements of intention to pay and the expectation of payment must be found to exist." *Silverthorne v. King* (1979), 179 Ind.App. 310, 385 N.E.2d 473, 476. "An inference may be drawn from the relationship and the situation of the parties, the nature and character of the services rendered, and any other facts and circumstances shedding light on the question at issue." *Id.*

When services are performed by a family member, who lives in the same household as the recipient, there is a presumption that the services were gratuitously performed. *Witt v. Witt* (1938), 105 Ind.App. 415, 12 N.E.2d 1013, 1015. There is no presumption that services performed by a non-family member are gratuitous. In fact, "[w]here the services are performed by one not a member of the recipient's family, an agreement to pay may be implied from the mutual relations, the situations, the conduct of the parties, and from the nature and character of the services rendered. *Johnson v. Gaugh's Estate* (1955), 125 Ind.App. 510, 124 N.E.2d 704, 708.

As the complaining witness, Thelma's testimony left much to be desired. Thelma testified that she did not employ Lucille, but that Lucille would bring her her mail, bathe her, and clean her home. R. 386, 87, 94. She described Lucille as a good worker. R. 388. Thelma stated that she didn't know if Lucille charged her for the work she performed. R. 387, 743. Thelma also did not want to bring charges against Lucille who was, in the words of the trial judge, the person that "left her bereft of her life saving." R. 68. Thelma also demonstrated a tendency to fade from reality. When asked a simple informational question requiring only a one-word response, Thelma drifted back in time and related a tale from her younger days. R. 67–71. Thelma, in her deposition, also fantasized about a cult of Satan worshipers, who she believed were meeting regularly in her apartment complex and plotting evil deeds. R. 91–97.

As for the nature of the offense—the amount of the check that Lucille was convicted of forging ($50.00) is relatively small. However, the costs, in terms of human tragedy and sorrow, are immense.

Yet the trial court was seemingly unaware of the nuances of the case before it. Furthermore, there is no evidence to support several of the aggravating factors cited by the trial court. The trial court sentenced Lucille as follows:

> [T]he aggravating circumstances which would justify an increase in the standard or base penalty are as follows: The victim in this case, Mrs. [sic] Myers, was eighty-six (86) years of age. She is feeble. The court observed her when she came to testify on the two occasions where she was called by the State of Indiana: that she came approximately the sixty (60) feet from the door to the outer area hallway to the witness area moving one step at a time behind a walker. She was unable to climb the one step into the witness chair, and as a result, testified in front of the jury from a chair with her walker in front of her. The defendant has shown a complete lack of

remorse in regard to this matter. The defendant has told more than one story in regard to this matter. The pattern of conduct evidenced by the defendant was to take the woman's money.[3] The evidence establishes beyond doubt that she took several thousands of dollars from this woman as a pattern of outright theft. She makes note on Page 6 of the Pre–Sentence Report, "Now Miss Myers did receive some telephone calls from some friends of mine. I didn't know that they threatened her. I did not hear this. They made them from my home. Now, I didn't know about this until one or two of them told me that they had called her and was having a little fun with her. I told them that I didn't think that was funny and I said I hoped that they didn't threaten her. They said, no they didn't threatened her. I had no part in that." To ask this court to accept that is to stagger the imagination of the Court. R. 884–885.

First, I am unable to understand how the trial judge could discern that Lucille demonstrated a complete lack of remorse. At the sentencing hearing, Lucille stated "I'm very sorry for what all has happened and everything and I just ... that's about all I can say." R. 881. In Lucille's Pre–Sentence Investigation Report, she maintained that she was not guilty—that Thelma wrote the checks to pay for the services that she performed. R. 173. Lucille stated that although she was upset about her predicament, she felt sorry for Thelma and harbored no animosity towards her. R. 174. Given Lucille's statements, I find no support for the trial court's finding that Lucille demonstrated a lack of remorse.

What Lucille did was to maintain that she was innocent of the crime. This means that she believed that she was "free from guilt or sin," or "free from legal guilt or fault." *Webster's New International Dictionary* 1921 (3d ed. 1976). Remorse, on the other hand, is defined as "a gnawing distress arising from a sense of guilt for past wrongs." *Id.* at 1166. If Lucille believed she was innocent, by the common

---

**3.** Lucille demonstrated a pattern of conduct de-
signed to provide services and care for Thelma.

definition, she was incapable of feeling remorse. Yet, she was subjected to an increased penalty for maintaining her innocence. As noted by Judge Robertson in addressing the argument that a trial court had imposed a harsher sentence because the defendant chose to exercise his right to plead not guilty and request a trial:

> [I]t is well settled that to punish a person for exercising a constitutional right is "a due process violation of the most basic sort." *Bordenkircher v. Hayes* (1978), 434 U.S. 357 [98 S.Ct. 663, 54 L.Ed.2d 604]. Moreover, it is constitutionally impermissible for a trial court to impose a more severe sentence because the defendant has chosen to stand trial rather than plead guilty. (citations omitted). It is also clear that under the appropriate circumstances, a defendant may receive a more severe sentence following his trial than he would have received had he pleaded guilty because the trial may reveal more adverse information about him than was previously known. However, a court may not impose a sentence that conflicts with a defendant's exercise of his constitutional right to a jury trial. (citations omitted).

*Walker v. State* (1983), Ind.App., 454 N.E.2d 425, 429.[4] When one exercises her right to a trial, she is pleading not guilty to the crime charged. At trial, the defendant is clothed with the constitutionally protected right to maintain that she is innocent. Here, we are presented with a logical extension of the constitutional right to maintain innocence at trial—the right to maintain innocence after trial. Nowhere is it written that a defendant, upon a conviction, must cry "uncle" and confess to the crime. There is a big difference—as far as lack of remorse is concerned—between stating that [you] did not commit the offense, and admitting that [you] did commit the offense and the victim got what he deserved.

The trial court stated that Lucille left Thelma "bereft of her life savings." R. 886. As for Thelma's financial condition and banking transactions during this period, I make the following comments. First of all, the prosecutor had access to all of Thelma's bank records (Thelma authorized the bank to release her records to the authorities). At trial, none of Thelma's bank statements were offered into evidence. Consequently, we do not know how much Thelma had in the bank or what transactions occurred in the year in question—except for the $2750 mentioned earlier which Lucille claimed Thelma agreed to pay her for her services. Secondly, the bank official did not testify that Thelma had $12,000 in her account or had any particular amount in her account at any particular time. The $12,000 amount mentioned by the majority appears to be a figment of Thelma's imagination. The bank officer testified that despite Thelma's account being overdrawn, Thelma had written in her check register, as her current balance, approximately $12,000. Thus, one cannot speculate that Lucille took huge sums from Thelma—there is no evidence to support it.

The trial court also stated that Lucille demonstrated a pattern of outright theft of Thelma's money. The prosecutor, who had access to Thelma's account only established that Lucille received about $2,750—which Lucille claims to be payment for services rendered to Thelma. The State, in introducing the twenty (20) checks, was trying to create a pattern. If there were other checks confirming their theory, the State would have tendered them.

In addition, the trial court found as aggravating factors the victim's age, and Lucille's alleged knowledge of friends threatening the victim. Lucille does not have the power to control the actions of her friends,

**4.** Because of the internal inconsistency between maintaining innocence and demonstrating a lack of remorse, our supreme court should reexamine their position that maintenance of innocence can be considered an aggravator in sentence enhancement. In light of *Bordenkircher, supra,* maintenance of innocence is not to be held against the defendant. In the meantime, I

read *Owens v. State* (1989), Ind., 544 N.E.2d 1375, for the proposition that "a lack of remorse by a person who maintains his innocence must be regarded as a *modest* aggravator," *Id.* at 1379 (emphasis added), to mean that at the very most, a sentence may only be *slightly* enhanced due to the defendant's lack of remorse while maintaining innocence.

and in fact denied having anything to do with the threats. There was no evidence that Lucille had knowledge of the threats, nor had Thelma testified that she had been threatened in regard to this case. While the victim, Thelma, was over the age of sixty-five (65), so is Lucille.

Article 1, § 18, of our Indiana Constitution states that "[t]he penal code shall be founded on principles of reformation, and not of vindictive justice." We must ask ourselves what is the point of sentencing a sixty-six (66) year-old first offender to seven years in prison for forging a $50.00 check. I am confounded as to why the trial court—in laboring to dig up aggravating factors—did not consider the necessary and valuable services Lucille performed as an important and significant mitigating factor. I acknowledge there is no evidence in the record as to the value of Lucille's daily care for Thelma. But I would venture to say that Lucille gave as much or more than she received. I would also add the obvious—that Thelma enjoyed peace of mind knowing that if she were ever to become ill or incapacitated, Lucille would learn of it during her daily visit.

Under the totality of the circumstances—Lucille is a sixty-six (66) year-old, widowed, poor, great-grandmother, who is a first-time offender, convicted of a non-violent crime, and who provided necessary and monetarily valuable services for an elderly woman who was not capable of taking care of herself—I would remand the cause and order the trial court to impose a two-year sentence—the four-year presumptive sentence minus two years for being a first offender—suspend all two years and place Lucille on probation.

SULLIVAN, Judge, concurring in result.

I fully agree that, as stated in Judge Miller's dissent, the trial judge was in error in considering "lack of remorse" as an aggravating factor. Furthermore, I agree with much of the remainder of the dissenting opinion.

Mayberry's crime is not justifiable as a self-help effort to collect compensation for services rendered. The trier of fact rea-sonably concluded that Mayberry did in fact intend to steal from Myers and did not negotiate the fifty dollar check in order to obtain legitimate compensation.

Nevertheless, the trial court might well have considered the totality of the circumstances to be somewhat in mitigation of the crime or crimes committed. The State in prosecuting appeared to do so. The prosecution might well have chosen to charge and seek conviction for multiple counts of forgery. However, despite twenty-two separate instances, the State elected to seek conviction upon only one forgery count. This prosecutorial election indicates a non-vindictive approach to Mayberry's pattern of conduct.

The sentence itself, for the single count, may well be harsh under the circumstances. I agree that many, if not most, sentencing authorities would have imposed a less harsh sentence. However, even though our Supreme Court might well do so in light of its past decisions, I am unable to say with absolute conviction that this sentence is so manifestly unreasonable as to require modification. For this reason I concur in the affirmance of the conviction and the sentence.