The ESTATE OF Ellen Nora HANN,
Appellant–Defendant,

v.

Jim HANN, Appellee–Plaintiff.

No. 61A01–9208–CV–284.

Court of Appeals of Indiana,
First District.

June 7, 1993.

Ronda R. Brown, Kenley and Kenley, Rockville, for appellant-defendant.

Clelland J. Hanner, Hanner Hanner & Hanner, Rockville, for appellee-plaintiff.

NAJAM, Judge.

## STATEMENT OF THE CASE

The Estate of Ellen Nora Hann ("Estate") appeals a $31,802.00 judgment in favor of Jim Hann ("Jim") on his claim against the Estate for one-half of the savings account in the name of Ellen Nora Hann ("Decedent") and for services rendered to the Decedent during her lifetime. The Estate alleges that Jim's claim was untimely, that any claim for services provided after April 3, 1985, is barred by the statute of limitations, that testimony was admitted in violation of the Dead Man's statute, and that the judgment was unsupported by the evidence and contrary to law. We affirm in part and reverse in part.

## ISSUES

We restate the issues presented as:

1. Whether Jim's claim against the Estate was timely filed.

2. Whether Jim's claim for services provided after April 3, 1985, is barred by the statute of limitations.

3. Whether the trial court erred by admitting testimony in violation of the Dead Man's statute.

4. Whether the award to Jim of one-half of the Decedent's savings account is supportable on any legal theory and supported by sufficient evidence.

5. Whether the evidence was sufficient to support Jim's claim for services rendered on behalf of the Decedent.

## FACTS

The facts most favorable to the judgment show that Jim, a disabled World War II veteran, returned from military service in 1946 and lived with his brother Carroll Hann and Carroll's wife, the Decedent. Jim lived with Carroll and the Decedent until 1973 when Carroll died. During that period, the three lived in a house Jim owned and relied primarily upon Jim's pension for living expenses.

After Carroll died, Jim and the Decedent agreed to remain living together and to help take care of each other. Jim and the Decedent had a joint checking account in which the Decedent deposited a portion of Jim's pension check and retained the rest for their living expenses. Jim paid for the house payments, groceries, utilities on the home, and an automobile.

Jim and the Decedent also agreed to establish a joint savings account. Jim gave the Decedent $100.00 per month to deposit in the savings account and Jim expected the Decedent to match his contribution with her own $100.00 contribution. The Decedent deposited $100.00 per month in the savings account from 1978 until her death in 1991. The date of death balance in the savings account was $20,454.84.

The day after the Decedent died, Jim discovered that the savings account which he thought was a joint account was only in the Decedent's name. Jim filed a claim against the Decedent's estate claiming one-half of the Decedent's savings account and also claiming payment for services rendered to the Decedent from 1973 to 1991. The Estate filed a motion to dismiss Jim's claim as untimely. Following an evidentiary hearing, the trial court denied the Estate's motion and found that Jim was entitled to one-half of the savings account and $21,600.00 for services, for a total judgment of $31,802.00. The Estate appeals. We will state additional facts in our discussion as needed.

### DISCUSSION AND DECISION

*Issue One: Timeliness of Jim's Claim*

■ The Estate first argues that Jim's claim is untimely because the claim was not entered on the court's estate docket within the five-month period prescribed by statute. *See* IND.CODE § 29–1–14–1. The Estate asserts that even though Jim's claim reflected a clerk's file stamp indicating that filing occurred within the required five-month period, Jim's claim was not entered on the estate docket and hence, was not timely filed. The Estate's position is unpersuasive.

In order to be timely, a claim against an estate must be "filed with the Court in which such estate is being administered within five (5) months after the date of the first published notice to creditors." *Id.* Since what constitutes "filing" a claim is not expressly defined in our probate code, we look to our trial rules for guidance. Under our trial rules, "filing with the court" is defined, among other ways, as

"[D]elivery to the clerk of the court." Ind.Trial Rule 5(E)(1).

■ Here, the document reflecting Jim's claim against the Estate was endorsed with a file stamp which indicated that Jim's claim was presented to the clerk of the Parke Circuit Court within the required five-month claim period. The file stamp endorsed on a document is merely evidence of filing with the court. *Kaster v. Heinrich* (1986), Ind.App., 489 N.E.2d 152, 155. The trial court heard testimony on this issue which suggested that Jim's claim was somehow misplaced and, therefore, was not entered on the court's estate docket in the usual manner. Under the trial rules, filing essentially means delivery to the Clerk. Entry on the estate docket is required, but late entry on the estate docket does not postpone the effective date of filing with the Clerk. There is evidence in the Record to support the trial court's determination and we will not disturb the trial court's finding that Jim's claim was timely filed within the prescribed statutory period.

*Issue Two: Statute of Limitations*

■ The Estate also contends that Jim's claim for services rendered after April 3, 1985, is barred by Indiana's six-year statute of limitations for actions on contracts not in writing. *See* IND.CODE § 34–1–2–1. We cannot agree. In a quantum meruit action for the fair market value of services rendered on behalf of the decedent over many years, the limitations period begins to run at the time the services cease. *Matter of Estate of Carroll* (1982), Ind.App., 436 N.E.2d 864, 866. The six-year statute of limitations governs actions in quantum meruit. *Id.* at 865 n. 3. We find no evidence suggesting that Jim ceased providing services to the Decedent prior to her death, and we thus conclude that the Estate's statute of limitations argument must fail.

*Issue Three: Dead Man's Statute*

■ The Estate maintains that the trial court abused its discretion by allowing Jim to testify regarding transactions be-

tween himself and the Decedent in violation of the Dead Man's statute. We agree that Jim was an incompetent witness with respect to those matters, but we conclude that the Estate waived the issue of Jim's competence by failing to make a timely objection to his testimony.

■ IND.CODE § 34–1–14–6, more commonly known as the Dead Man's statute, provides that in an action against the estate of a decedent, a party to the action whose interest is adverse to the estate is not a competent witness to matters which occurred during the decedent's lifetime. IND.CODE § 34–1–14–6. However, the estate may waive the protection of the Dead Man's statute and render a witness competent by calling the witness on the estate's behalf, by failing to object when the adverse party calls himself to testify on his own behalf, or by questioning the witness beyond the scope of direct examination. *Matter of Estate of Palamara* (1987), Ind. App., 513 N.E.2d 1223, 1232.

Here, the Estate contends that it made a timely objection to Jim's competence because it objected at the point in Jim's testimony where he was questioned specifically regarding the Decedent's savings account. Our examination of the record reveals that the Estate's objection came too late in Jim's testimony to preserve the statutory presumption that Jim was an incompetent witness. Prior to the Estate's objection, Jim gave testimony concerning his relationship with the Decedent during the years he lived with her. Jim testified that he bought groceries and provided a home for the Decedent for more than twenty-two years. Record at 90. Jim stated that he gave the Decedent $750.00 per month to purchase groceries for himself and the Decedent and to buy the Decedent cigarettes. Record at 91. He also testified that he and the Decedent maintained a joint checking account. Record at 91. It was only when Jim was asked what agreement he had with the Decedent with respect to the disputed savings account that the Estate finally objected and invoked the Dead Man's statute. Record at 92. That objection was overruled. Record at 92.

■ The Dead Man's statute addresses the competence of a witness, not the competence of that witness's testimony. *See Senff v. Estate of Levi* (1987), Ind. App., 515 N.E.2d 556, 559, *trans. denied.* Furthermore, an otherwise incompetent witness may be competent to testify as to some matters occurring during the decedent's lifetime. *Johnson v. Estate of Rayburn* (1992), Ind.App., 587 N.E.2d 182, 185 (witness not called to testify regarding any matter or transaction with decedent); *Matter of Estate of Niemiec* (1982), Ind.App., 435 N.E.2d 570, 572, *trans. denied* (attorney could testify to facts regarding client not obtained through confidential communications); *Citizens State Bank v. Kelley* (1959), 130 Ind.App. 376, 379, 162 N.E.2d 322, 323, *trans. denied* (witness competent as to matters bearing on mental soundness of decedent). Nevertheless, Jim, as a claimant against the Decedent's estate, took the witness stand in support of his claim to recount transactions and understandings he allegedly had with the Decedent during her lifetime. Jim was an otherwise incompetent witness as to his financial dealings with the Decedent. By failing to make a timely objection to Jim's testimony, the Estate waived his incompetence. The trial court did not abuse its discretion by overruling the Estate's belated objection and allowing Jim to continue his testimony.

### Issue Four: Savings Account

■ The Estate next argues that the trial court erred as a matter of law and that the evidence was insufficient to support an award to Jim of one-half of the savings account held solely in the Decedent's name ("Account"). The Estate asserts that since the Account was not a joint account with a right of survivorship, Jim had no interest in the account. The Estate appeals a general judgment on this issue, and we will affirm a general judgment on any legal theory supported by the evidence. *Beck v. Mason* (1991), Ind.App., 580 N.E.2d 290, 291. We conclude that the trial court properly awarded Jim one-half of the Account.

At the outset, we note that neither the trial court nor Jim presented us with any legal theories to support the award of funds from the Account. While we will affirm a general judgment on any legal theory supported by the evidence, we will not affirm on a theory not litigated in the trial court. *Bahre v. Metropolitan School District of Washington Township* (1980), Ind.App., 400 N.E.2d 197, 199. We also note that Ind.Appellate Rule 8.3(B) requires that the Brief of the Appellee shall contain an argument setting out his contentions together with citations to the authorities, statutes, and parts of the record relied upon. We will not make Jim's case on appeal.

■ However, even without guidance from the appellee, we conclude that the trial court's judgment awarding Jim one-half of the Account may be supported on a resulting trust theory. A resulting trust or implied trust is created by implication of law based upon the presumed intentions of the parties. *Emberry Community Church v. Bloomington District Missionary and Church Extension Society, Inc.* (1985), Ind.App., 482 N.E.2d 288, 293. One commentator has described resulting trusts as "intent enforcing." Bogert, *Trusts and Trustees* § 451, at 226 (1991).

■ In Indiana, resulting trusts with respect to real estate are largely a creature of statute, and statutory requirements must be complied with for a resulting trust to exist. *Workman v. Douglas* (1981), Ind.App., 419 N.E.2d 1340, 1344; *see* IND.CODE § 30–1–9–6 *et seq.* (placing conditions on imposition of resulting trust for conveyances of real property). However, not all resulting trusts are governed by statute.[1] Resulting trusts may also apply to personal property, and statutes controlling the application of a resulting trust to real property do not apply to personal property. *McQuaide, Administratrix v. McQuaide* (1929), 92 Ind.App. 370, 383–84, 168 N.E. 500, 504–505, *trans. denied.*

Here, the evidence most favorable to the judgment discloses that Jim and the Decedent intended to establish a joint savings account for the deposit of both of their funds. The res of this trust was personal property, specifically Jim's money and the Decedent's money. The trial court's determination that Jim was entitled to one-half of the Account can be supported on a resulting trust theory because the court could have concluded that Jim and the Decedent intended to set up a joint savings account but failed to accomplish their intent. The court could have properly applied a resulting trust to "enforce" Jim's and the Decedent's intentions.

■ We are also satisfied that the trial court's judgment in favor of Jim on the Account claim is supportable on equitable grounds. One maxim of equity provides that equity regards that as done which ought to be done. *Becker v. MacDonald* (1986), Ind.App., 488 N.E.2d 729, 733. This maxim has been applied to afford relief under those circumstances where one party omitted to perform an act he was required to do to the detriment of another. *See Continental Insurance Co. v. Bair* (1917), 65 Ind.App. 502, 511, 114 N.E. 763, 767 (maxim applied to find no breach of insurance policy by insured where insurer agreed to endorse policy for insured but failed to do so). The Decedent, by her own mistake or inadvertence, failed to name Jim on the Account prior to her death and did not accomplish their mutual intentions. Indeed, if a joint savings account had been established, the entire account would have belonged to Jim upon the Decedent's death. *See* IND.CODE § 32–4–1.5–4(a). A trial court has wide discretion in providing equitable relief to the parties. *See W & W Equipment Co. v. Mink* (1991), Ind.App., 568 N.E.2d 564, 577 n. 7, *trans. denied.* Thus, the trial court properly allowed Jim's claim to one-half of the Account on equitable grounds.

---

**1.** We are also mindful of the general rule that only trusts evidenced by a writing are enforceable. IND.CODE § 30–4–2–1(a). However, a resulting trust is a creature of equity designed to do justice, and it is not governed by the parol evidence rule, statute of frauds or any other rules of law pertaining to express trusts. *Criss v. Bitzegaio* (1981), Ind., 420 N.E.2d 1221, 1224.

Having found a legal theory to support the general judgment, we now turn to the Estate's claim that the evidence was insufficient to support Jim's claim for one-half of the Decedent's Account. The Estate asks us to reweigh the evidence, which we cannot do. There was evidence tending to establish that Jim gave the Decedent money to place in the Account pursuant to an agreement. We will not disturb the court's judgment on this issue.

*Issue Five: Sufficiency of Evidence on Claim for Services*

■■■ The Estate finally argues that the evidence was insufficient to support Jim's claim for services he rendered to the Decedent during her life.[2] When assessing a claim of insufficient evidence, we will neither reweigh the evidence nor judge the credibility of witnesses. *Marathon Petroleum Co. v. Colonial Motel Properties, Inc.* (1990), Ind.App., 550 N.E.2d 778, 782. We view only the evidence supporting the judgment, and will affirm if the judgment is supported by substantial evidence of probative value to establish each element of the claim. *Id.* Likewise, conflicts in the evidence, standing alone, do not render the evidence insufficient if there is relevant evidence to support the claim. *Burell v. Riggs* (1990), Ind.App., 557 N.E.2d 698, 702, *trans. denied.* Having reviewed the entire record, we conclude that the evidence here was insubstantial and insufficient as a matter of law to establish the existence of a contract which would support Jim's quantum meruit claim for the fair market value of his services performed for the Decedent.

■■■ Where one accepts valuable services from another the law implies a promise to pay for them. *Silverthorne v. King* (1979), 179 Ind.App. 310, 314, 385 N.E.2d 473, 476. Where services are performed by a non-family member, an agreement to pay may be implied from the relationship of the parties, the situation, the conduct of the parties, and the nature and character of the services rendered. *Cole v. Cole* (1988), Ind.App., 517 N.E.2d 1248, 1250. However, where the parties are family members living together, and the services are rendered in the family context, no implication of a promise to pay by the recipient arises. *Id.* Rather, there is a presumption that services are performed gratuitously when there is evidence of a blood or family relationship between the decedent and the claimant, unless a contract implied in fact is shown. *Id.*

■■■ A claim against a decedent's estate rests upon an express or implied contract. *Blowers v. Manley* (1968), 142 Ind. App. 138, 141, 233 N.E.2d 184, 186. To warrant a finding of an express or implied contract to pay for services rendered by a claimant, both the elements of intention to pay and expectation of compensation must be found to exist. *Id.; Silverthorne,* 179 Ind.App. at 314, 385 N.E.2d at 476. While the law implies an agreement to pay for services rendered, the implication may be rebutted by evidence that the circumstances under which the services were rendered and accepted were such as to exclude the idea that the parties were dealing on the basis of a contract. *Silverthorne,* 179 Ind.App. at 315, 385 N.E.2d at 477.

In this case, there is no evidence of the Decedent's intention to pay Jim for his services. Jim testified that he expected the Decedent to pay for his services and that he told her so, but in response to the question whether the Decedent intended or expected to pay for his services, Jim replied, "Well, I thought she would." Record at 95. However, Jim admitted that in his agreement with the Decedent to live together following Carroll's death, there was no mention of payment for services. Record at 97. Janet Phillips, the Decedent's niece, confirmed that the Decedent did not expect to pay Jim for taking care of her. Record at 82.

---

2. Both parties characterize Jim's claim as a claim for services. However, the claim which he filed with the Clerk of the Court was for "a home, food, utilities and an automobile" he furnished to the Decedent. Such a claim is more properly described as a claim for money paid for the use or benefit of another or for money had and received. *See* 19 I.L.E. *Money Lent, Paid, or Received* §§ 2, 3 (1959).

In a similar factual context, we have held that as between in-laws living together, there was insufficient evidence to establish an implied contract for payment of services. *See Walting v. Brown* (1965), 139 Ind. App. 18, 27, 211 N.E.2d 803, 808, *trans. denied.* In *Walting,* a mother-in-law, daughter, and son-in-law lived together until the death of the daughter at which time the mother-in-law and son-in-law continued living together. *Id.* at 21, 211 N.E.2d at 805. The mother-in-law and son-in-law continued operating a farm and maintained the home in the same manner as before the death of the daughter, splitting net income equally. *Id.*

In *Walting,* we found two facts to be significant. First, the evidence was that the mother-in-law and son-in-law were members of the same household for more than twenty years. *Id.* at 23, 211 N.E.2d at 806. Second, the evidence also suggested that their relationship was designed for their mutual benefit. *Id.* at 27, 211 N.E.2d at 809. We noted that the claimant's services there were more properly characterized as acts of kindness without expectation of compensation and that filing the claim for services was merely an afterthought. *Id.* at 27, 211 N.E.2d at 808.

Here, like the parties in *Walting,* Jim and the Decedent lived together as family members for many years. In fact, the evidence reveals that Jim lived with the Decedent for a total of forty-five years. Although Jim stated that he and the Decedent were "just friends," he admitted that they were also "close." Record at 94. The Decedent's nephew, Mike Phillips, characterized their relationship as a "very close" family relationship. Record at 104. According to Janet Phillips, Jim and the Decedent were very close friends and Jim "really loved her [the Decedent]." Record at 82. Where the circumstances establish that the claimant and decedent lived together as family members for several years, the absence of a legal relationship between the parties does not necessarily raise the presumption of an implied contract to pay for services. *See Walting,* 139 Ind.App. at 23, 211 N.E.2d at 806.

Furthermore, the evidence establishes that the living arrangement between Jim and the Decedent was for their mutual benefit. Jim testified that he and the Decedent agreed to live together after Carroll's death for the purpose of helping each other. While Jim generously provided the Decedent with a home and groceries over the years, Jim received benefits in return for his generosity, including the Decedent's companionship. Jim, paralyzed following his service in World War II, relied upon the Decedent to act for him in performing tasks outside of the home that he was unable to perform. Record at 95. He admitted that he and the Decedent were dependent upon each other to an extent. Record at 96.

We conclude that Jim's claim for services has all the earmarks of an afterthought and that his acts of providing services for the Decedent were mere acts of love, kindness and mutual support. Jim has not overcome the presumption that in a family relationship where there is mutual benefit, the services were rendered gratuitously. Jim has failed to demonstrate that under the circumstances both he and the Decedent were dealing on the basis of a contract and that the Decedent intended to pay him. Therefore, we hold that Jim has failed to establish, as a matter of law, the existence of an implied contract with the Decedent to pay him for his services.

The judgment is affirmed with respect to Jim's claim for one-half of the Decedent's savings account and reversed on Jim's claim for services.

Affirmed in part and reversed in part.

BAKER and SHIELDS, JJ., concur.