**PERDUE FARMS INCORPORATED,
Appellant–Defendant,**

v.

**Darrell R. PRYOR, Appellee–Plaintiff.**

No. 63A01–9406–CV–172.

Court of Appeals of Indiana,
First District.

Feb. 16, 1995.

Rehearing Denied April 25, 1995.

Marilyn R. Ratliff, Kahn, Dees, Donovan, & Kahn, Evansville, for appellant.

Bruce A. Smith, Washington, for appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Perdue Farms Incorporated ("Perdue Farms") brings this interlocutory appeal from the trial court's judgment in favor of

Darrell R. Pryor.[1] Pryor brought suit against Perdue on the theories of negligence and strict product liability for personal injuries he suffered while attempting to repair certain farm equipment. In a bifurcated trial the trial court entered a general judgment on the question of liability and found Perdue Farms liable for Pryor's injuries before reaching the damages question.[2]

We reverse.

## ISSUES

Perdue Farms presents several issues for our review which we restate as follows:

1. Whether as a matter of law Pryor incurred the risk of his injuries.

2. Whether the evidence supports the trial court's judgment on a negligence theory.

## FACTS

On September 25, 1988, Darrell R. Pryor injured his lower back while attempting to repair a jammed feed auger on the turkey farm operated by Donald Zwilling. At that time, Zwilling was under contract with Perdue Farms. The contract provided that Perdue Farms would supply Zwilling with day-old turkeys and that Zwilling would raise the turkeys until maturity. Pursuant to the contract, Perdue Farms supplied all feed and necessary medication for the turkeys, while Zwilling provided the housing and feed equipment. Perdue Farms manufactured the turkey feed at its Washington, Indiana, feed mill and delivered it by independent trucking companies to the individual farmers as requested. At the time of the accident, Pryor was employed by K & M Agricultural Services. His duties included both installing and repairing feed delivery systems, such as the feed auger located on Zwilling's farm.

On September 26, 1988, Zwilling's feed delivery system jammed, and Pryor was sent to the farm to do any necessary repairs. After he investigated the problem, Pryor discovered that a "three inch wing bolt"[3] was

jammed next to the auger and prevented it from operating. Pryor removed the bolt with a screwdriver and then attempted to restart the auger. However, turkey feed around the auger had hardened and Pryor determined that he would need to remove the auger from the feed delivery tube in order to restart the system. Pryor then physically attempted to pull the auger from the feed line with his hands. To gain leverage, he placed both feet on grain bins beneath the auger and off the ground, placed his hands on the auger and began to pull. The auger suddenly became dislodged and Pryor fell backward, hitting his lower back on the edge of a concrete pad in Zwilling's barn.

Pryor filed his two count Complaint alleging that Perdue Farms was liable under the Indiana Product Liability Act and under the common law doctrine of negligence. The parties agreed to a bifurcated trial. After a bench trial on the question of liability, the court entered a general judgment in favor of Pryor. Thereafter, Perdue Farms perfected this interlocutory appeal.

## DISCUSSION AND DECISION

### Standard of Review

Perdue Farms appeals from a general judgment. We will affirm a general judgment on any legal theory supported by the evidence. *Estate of Hann v. Hann* (1993), Ind.App., 614 N.E.2d 973, 977. This court neither reweighs the evidence nor judges the credibility of the witnesses *Id.* at 979. We view only the evidence most favorable to the judgment, and we will affirm if there is substantial evidence of probative value to support each element of the claim. *Beck v. Mason* (1991), Ind.App., 580 N.E.2d 290, 291. Conflicts in the evidence, standing alone, do not render the evidence insufficient if there is relevant evidence to support the claim. *Estate of Hann*, 614 N.E.2d at 977.

---

1. We accepted jurisdiction of this appeal pursuant to Indiana Appellate Rule 4(B)(6).

2. We heard oral argument on January 11, 1995.

3. Perdue Farms concedes for purposes of this appeal that the bolt found in the auger originated at the Perdue Farms feed mill and must have been located in the turkey feed when delivered to Zwilling's farm.

### Issue One: Incurred Risk

Perdue Farms contends the trial court erred when it found Perdue Farms liable for Pryor's injuries on the grounds that certain undisputed facts establish that Pryor incurred the risk of his injuries as a matter of law. We agree.

Incurred risk is a defense to both product negligence and strict product liability claims. *Schooley v. Ingersoll Rand, Inc.* (1994), Ind.App., 631 N.E.2d 932, 939. Although the defense of incurred risk is a doctrine of common law negligence, it is also codified by statute as it pertains to any product liability action based on strict liability in tort. *Id;* see IND.CODE § 33-1-1.5-4(b)(1). Our supreme court has described the defense of incurred risk as:

> A mental state of venturousness on the part of the actor, and demands a subjective analysis into the actor's knowledge and voluntary acceptance of the risk. By definition ... the very essence of incurred risk is the conscious, deliberate and intentional embarkation upon the course of conduct with knowledge of the circumstances. It requires much more than the general awareness of a potential for mishap. Incurred risk contemplates acceptance of a specific risk of which the plaintiff has actual knowledge.

*Beckett v. Clinton Prairie Sch. Corp.* (1987), Ind., 504 N.E.2d 552, 554. "It is not enough that a plaintiff have merely a general awareness of a potential for mishap, but rather, the defense of incurred risk demands a subjective analysis focusing upon the plaintiff's actual knowledge and appreciation of the specific risk and voluntary acceptance of that risk." *Clark v. Wiegand* (1993), Ind., 617 N.E.2d 916, 918. A specific risk involves only the ordinary and usual risks inherent in a given act. *Beckett,* 504 N.E.2d at 554.

The defense of incurred risk is generally a question of fact. *Lilge v. Russell's Trailer Repair Inc.* (1991), Ind.App., 565 N.E.2d 1146, 1150. The party asserting the defense bears the burden of proving incurred risk by a preponderance of the evidence. *Moore v. Sitzmark Corp.* (1990), Ind.App., 555 N.E.2d 1305, 1307. Incurred risk may be found as a matter of law only if the evidence is without conflict and the sole inference to be drawn is that the plaintiff knew and appreciated the risk, but nevertheless accepted it voluntarily. *Ferguson v. Modern Farm Systems, Inc.* (1990), Ind.App., 555 N.E.2d 1379, 1381, *trans. denied.*

In *Ferguson,* this court held, as a matter of law, that the plaintiff had incurred the risk of falling off a ladder. *Id.* at 1382. The plaintiff in *Ferguson* climbed a ladder, which was not equipped with a safety cage, and used only one hand as he carried a pipe in his other hand. He was injured when his left hand slipped off a rung and he fell to the ground. We held that "when one knows and appreciates the risk of falling as a result of a dangerous condition, yet voluntarily continues to use the dangerous instrumentality, the injured party incurs the risk as a matter of law." *Id.* at 1381.

In the present case, Pryor discovered the product defect, the bolt which caused the auger to jam, well before he attempted to pull the auger from the feed tube. After he had determined that he would need to remove the auger from the feed tube in order to restart the system, Pryor was faced with a decision on what procedure to use to release the auger. He chose to remove both feet from the ground and place them on the grain bins beneath the auger and then use his hands to pull the auger. When the auger dislodged, Pryor fell backward, and hit a cement pad injuring himself.

Confronted with non-emergency circumstances, Pryor voluntarily chose the above-described method to repair the system. Pryor testified at trial that he did not generally like to pull an auger by hand because he did not want to "strain" himself, and because he "didn't want to get hurt" Record at 334 and 345. This testimony leads unequivocally to the conclusion that Pryor had actual knowledge that he could be injured as a result of his election to pull the auger by hand. While Pryor injured his back when he fell backward and hit the cement pad rather than as a result of straining himself while pulling, the fact that he was not injured in the exact way he had contemplated is of no consequence. The defense of incurred risk

does not require a showing that the plaintiff had foresight "that the particular accident and injury which in fact occurred was going to occur." *Forrest v. Gilley* (1991), Ind.App., 570 N.E.2d 934, 936, *trans. denied.*

Pryor maintains that he might have avoided injury by using a device known as a "come-along" to free the auger, but that he was instructed by his employer to pull a jammed auger by hand in order to avoid possible damage to the auger. Still, Pryor testified at trial that despite his employer's instructions he had used a come-along to repair a jammed auger on every previous occasion in order to avoid injury. Record at 333. Further, during his deposition, Pryor's employer testified that when pulling an auger by hand, "you have to take into consideration your safety on it" and "you have to make sure there's nothing you're going to fall on top of." Record at 617–18. While pulling the auger by hand may have been a recognized procedure to release a jammed auger, both Pryor and his employer had actual knowledge and appreciated the danger of using that procedure.

Pryor knew and appreciated the specific risk inherent in pulling the auger by hand and, as in *Ferguson,* he voluntarily accepted that risk as part of his job when he chose that method instead of another. Not only did Pryor choose to pull the auger by hand, but he also chose to remove both of his feet from the ground to gain leverage and use his entire body weight to achieve his objective. When, as here, a person has actual knowledge of the potential for injury, but makes a deliberate and intentional choice concerning the manner in which to proceed, and he is injured as a direct result of the manner chosen, that person has voluntarily accepted the risk inherent in that choice. Thus, we hold that on these facts Pryor incurred the risk of his injuries as a matter of law.

### Issue Two: Negligence

As stated, we will affirm a general judgment on any theory supported by the evidence. *Estate of Hann,* 614 N.E.2d at 977. Pryor asserted two theories of recovery against Perdue Farms: strict product liability and negligence. Incurred risk is a complete defense to a plaintiff's strict liability claim.[4] *See* Issue One. Because we have determined that Pryor incurred the risk of his injuries, and because incurred risk is a complete defense to strict product liability, the general judgment cannot be affirmed on a strict liability theory. However, incurred risk is not a complete bar to recovery in a negligence action; rather, the defense is subject to the Comparative Fault Act. *See* IND. CODE § 34–4–33–2(a); *Bob Schwartz Ford, Inc. v. Dunham* (1994), Ind.App., 631 N.E.2d 953, 957. Thus, we must determine whether the judgment is sustainable under a negligence theory.

The tort of negligence consists of three elements: (1) a duty on the part of the defendant in relation to the plaintiff; (2) a failure by the defendant to conform its conduct to the requisite standard of care; and (3) an injury to the plaintiff proximately caused by the failure. *Smith v. Beaty* (1994), Ind.App., 639 N.E.2d 1029, 1032. On appeal, Perdue Farms asserts only that it owed no duty to Pryor.

Whether a duty exists in a negligence action, that is, whether the law recognizes any obligation on the part of a particular defendant to conform his conduct to a certain standard for the benefit of the plaintiff, is a question of law. *Webb v. Jarvis* (1991), Ind., 575 N.E.2d 992, 995. Among the relevant considerations in determining whether a common law duty exists between parties are (1) the relationship between the parties, (2) the reasonable foreseeability of harm to the person injured, and (3) public policy concerns. *Id.*

On the question of duty, we are concerned first with the idea of relation, in other words, whether the relationship between the parties supports the concept of duty and potential liability. It has been said that from the beginning common law courts have been solving legal problems in terms of relation and that relation is the chief systematic idea,

---

4. The Comparative Fault Act does not include actions based on strict liability theory, but only those actions based on fault. *See* IND.CODE § 34–4–33–1 et seq; *Moore,* 555 N.E.2d at 1308 n. 2.

the central idea of the common law. *See* Roscoe Pound, *The Future of the Common Law* 15–16 (Peter Smith ed., Harvard Tercentenary Publications 1965) (1936). Hence, the question here is whether the relationship between Perdue Farms and Pryor can support the conclusion that Perdue Farms owed Pryor a duty at the time he was injured.

■ It is clear that a manufacturer is under a duty to manufacture products which are reasonably fit and safe for the purpose for which they are intended. *Liberty Mutual Ins. Co. v. Rich Ladder Co.* (1982), Ind.App., 441 N.E.2d 996, 999. However, "the duty of reasonable care is not, of course, owed to the world at large, but rather to those who might reasonably be foreseen as being subject to injury by the breach of the duty." *Thiele v. Faygo Beverage, Inc.* (1986), Ind.App., 489 N.E.2d 562, 574.

Our supreme court has stated:

Imposition of a duty is limited to those instances where a reasonably foreseeable victim is injured by a reasonably foreseeable harm. Thus, part of the inquiry into the existence of a duty is concerned with exactly the same factors as is the inquiry into proximate cause *Prosser & Keeton on Torts,* § 53 (5th ed. 1984). Both seek to find what consequences of the challenged conduct could have been foreseen by the actor who engaged in it. We examine what forces and human conduct should have appeared likely to come on the scene and we weigh the dangers likely to flow from the challenged conduct in light of these forces and conduct *Harper, James & Gray,* The Law of Torts Vol. 3 § 18.2 (2d ed. 1986).

*Webb,* 575 N.E.2d at 997.

Thus, in *Webb* our supreme court reaffirmed that foreseeability is not only an element of proximate cause but is also a component of duty under Indiana law. *See Fawley v. Martin's Supermarkets, Inc.* (1993), Ind.App., 618 N.E.2d 10, 13, *trans. denied* (citing *Webb,* 575 N.E.2d at 997). In *Fawley,* we noted Justice Cardozo's opinion in *Palsgraf v. Long Island R. Co.* (1928), 248 N.Y. 339, 344, 162 N.E. 99, 100, in which he explained the importance of the foreseeability component of duty when he wrote "[t]he risk reasonably to be perceived defines the duty to be obeyed." *Id.* While here we are only concerned with whether Perdue Farms owed Pryor a duty, we must inquire into both the relationship between the parties and the foreseeability of the harm.

■ At the outset, the relationship between the parties in this case was that of a turkey feed manufacturer and a repairman summoned to repair an auger which was rendered inoperative as a result of a defect in the turkey feed. However, Pryor found and removed the foreign object which caused the defect in Perdue Farms' product well before he attempted to pull the auger from the feed tube. He then, exercising his own judgment, selected the method by which to free the auger. At the time he was injured, Pryor was not repairing any product manufactured by Perdue Farms and, thus, did not have a relationship with Perdue Farms which would support a duty in negligence.

Further, Perdue Farms could not have reasonably foreseen that Pryor would be injured after he located and removed the defect in its product. Pryor was injured as a result of his independent choice, not by Perdue Farms' defective product. In sum, while Perdue Farms could have foreseen that a defect in its turkey feed would require repair of the auger, Perdue Farms could not have anticipated that a repairman with experience in repairing feed delivery systems would select an inherently dangerous method to accomplish that repair. The circumstances here did not impose upon Perdue Farms a duty to protect Pryor from the consequences of his own deliberate course of conduct.

We do not mean by our decision that a product manufacturer never owes a duty to a repairman who comes into contact with that manufacturer's product. We conclude only that the relationship required to impose a duty on Perdue Farms is absent under the circumstances. Moreover, based on these facts, Pryor was not a reasonably foreseeable victim who was injured by a reasonably foreseeable harm. *Id.* We hold, as a matter of law, that Perdue Farms owed no duty to Pryor. Thus, the general judgment cannot be sustained on a negligence theory.

## CONCLUSION

The general judgment finding Perdue Farms liable for Pryor's injuries cannot be affirmed on a strict liability theory or on a negligence theory. The trial court's judgment on the question of liability is reversed.

Reversed.

BAKER and FRIEDLANDER, JJ., concur.