**Archie Clarkson FOWLER, Jr.,**
**Respondent–Appellant,**

v.

**Rose Ann NAPIER, Petitioner–Appellee.**

No. 49A04–9510–JV–409.

Court of Appeals of Indiana.

April 17, 1996.

Richard A. Mann, Mann & Deeter, Indianapolis, for appellant.

Pamela Carter, Attorney General, Andrew L. Hedges, Deputy Attorney General, Indianapolis, for appellee.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

Archie Fowler appeals the trial court's judgment finding him to be the father of T. We affirm.

### ISSUES

I. Whether T.'s mother rebutted the statutory presumption of Ind.Code 31–6–6.1–9(a)(3).

II. Whether the trial court erroneously qualified Dr. Giles as an expert.

III. Whether the trial court erred in admitting the DNA test results.

IV. Whether there is sufficient evidence to sustain the paternity determination.

### FACTS

Rose Napier and Archie Fowler engaged in sexual intercourse on numerous occasions in February, March and April 1979. Further, neither Rose nor Fowler used any form of birth control, and Rose did not engage in sexual intercourse with any other men during that period. Rose gave birth to a full-term baby daughter, T., on December 16, 1979.

On September 29, 1980, Rose instituted a paternity action against Fowler. However, the blood test taken at that time was inconclusive.[1] In 1984, Rose married Frank Napier. Two years later, Rose and Napier signed an Indiana State Board of Health affidavit stating that Napier was T.'s father. Although Rose knew that Napier was not T.'s biological father, she signed the affidavit "so [they] could be more of a family unit." (R. 112).

On March 30, 1994, T., by her next friend Rose, filed a petition alleging that Fowler was T.'s biological father. The petition requested child support and medical insurance coverage. At the paternity hearing, Dr. Robert Giles, scientific laboratory director of GeneScreen, a nationally accredited DNA testing laboratory, testified that he had a Ph.D. in immunology and medical microbiolo-

---

1. The blood test analysis provides in pertinent part as follows:

   The results of these tests, with the possible exception of the Duffy marker, do not exclude the possibility that Archie Fowler is the father of Rose Holden's child, [T.].

   In the case of the Duffy system, it is highly probable that Mr. Fowler cannot be the father of Rose Holden's child, [T.], but there is a small probability that he is. Mr. Fowler may have a "blank" gene at the Duffy system and could have transmitted this blank gene to [T.].

   Since we cannot satisfactorily resolve this case, we recommend tissue typing [HLA typing]. Tissue typing will in all likelihood settle this question. . . .

   (R. 149). No additional tests were performed.

gy. Giles further testified that, among other things, he participated in a four-year post-doctoral fellowship for the study of humanoid genetics and molecular biology. After the trial court qualified Dr. Giles as an expert witness over Fowler's objection, the doctor testified that GeneScreen's DNA testing of Fowler revealed that there was a 99.99% chance that Fowler was T.'s biological father. Dr. Giles further testified that the odds favoring paternity were two million times greater than the odds favoring non-paternity.

On June 29, 1995, the trial court issued the following judgment:

> The court previously taken this matter under advisement now finds for the petitioner and finds Archie Fowler to be the father of the minor child, [T.] . . . .

(R. 90). It is from this judgment that Fowler appeals.

## DECISION

### I. *Statutory Presumption*

Ind.Code 31–6–6.1–9 provides in pertinent part as follows:

> (a) A man is presumed to be a child's biological father if:
>
> (1) The man and the child's biological mother are or have been married to each other and the child is born during the marriage . . . ;
>
> (2) The man and the child's biological mother attempted to marry each other by a marriage solemnized in apparent compliance with the law even though the marriage is void . . . and the child is born during the attempted marriage . . . ;
>
> (3) The man acknowledged paternity in a writing filed with the state registrar of public statistics of the state department of health or with a local board of health; . . . .
>
> (b) If there is no presumed biological father under subsection (a), a man is presumed to be the child's biological father if with the consent of the child's mother the man receives the child into the man's home and openly holds the child out as the man's biological child.
>
> (c) A presumption under subsection (b):
>
> (1) Is rebuttable; and

> (2) Does not prevent the filing of an action to establish paternity under this chapter.

■ Fowler first argues that the presumption in I.C. 31–6–6.1–9(a) is not rebuttable. Specifically, in this issue of first impression, Fowler argues that because I.C. 31–6–6.1–9(c) refers only to rebutting the presumption in I.C. 31–6–6.1–2(b), the presumption in I.C. 31–6–6.1–9(a) is not rebuttable. We disagree. In *Cooper v. Cooper*, 608 N.E.2d 1386, 1387 (Ind.Ct.App.1993), this court stated that the I.C. 31–6–6.1–9(a)(1) presumption is rebuttable. Because that presumption is rebuttable, we find no logical reason why the I.C. 31–6–6.1–9(a)(3) presumption is not rebuttable as well.

■ Fowler further argues that even if the presumption is rebuttable, Rose failed to rebut it. In *Cooper, supra,* we stated that the I.C. 31–6–6.1–9(a)(1) presumption may be rebutted by direct, clear and convincing evidence that the husband:

> (1) is impotent; (2) was absent so as to have no access to the mother; (3) was absent during the entire time the child must have been conceived; (4) was present with the mother only in circumstances which clearly prove there was no sexual intercourse; (5) was sterile during the time the child must have been conceived; [or] (6) is excluded as the child's father based upon blood grouping test results.

*Id.* at 1387. We see no reason why the I.C. 31–6–6.1–9(a)(3) presumption may not be rebutted by the same evidence regarding the man who acknowledged paternity.

■ Here, Rose testified that the only person with whom she had sexual intercourse in February, March and April 1979 was Fowler. Because Fowler is the only person with whom she had sexual intercourse during this period, Napier was either absent during the entire time that the child must have been conceived or was present with the mother only in circumstances which clearly prove there was no sexual intercourse. We find no error.

## II. *Expert Witness*

Fowler next argues that the trial court improperly qualified Dr. Giles as an expert witness. The question of whether an expert is qualified rests within the sound discretion of the trial court. *Landau v. Bailey*, 629 N.E.2d 264, 267 (Ind.Ct.App.1994), *reh'g denied.* An expert may be qualified by both practical experience and formal training. *Id.*

Here, Dr. Giles testified that he received a Ph.D. in immunology and medical microbiology in 1982. Thereafter, he participated in a post-doctoral fellowship in humanoid genetics and molecular biology and was an assistant professor in the department of internal medicine. Further, Giles had been the scientific laboratory director at GeneScreen, an American Association of Blood Banks accredited laboratory for paternity testing utilizing DNA analysis, since 1987. In addition, Giles was a member of the American Society for Human Genetics, the American Association of Blood Banks, the American Association for the Advancement of Science, and the Technical Working Group on DNA Analysis and Methodology. The trial court did not abuse its discretion by qualifying Dr. Giles as an expert.

## III. *DNA Test Results*

Fowler further argues that the trial court erred in admitting the DNA test results as a business record. The admission of evidence is a determination entrusted to the discretion of the trial court. *Reeves v. Boyd and Sons, Inc.*, 654 N.E.2d 864, 866 (Ind.Ct.App.1995), *trans. denied.* On appellate review, we determine whether the trial court abused its discretion in admitting evidence. *Id.* A trial court abuses its discretion when its action is clearly erroneous and against the logic and effect of the facts and circumstances before it or the reasonable inferences to be drawn therefrom. *Id.*

This court recently re-stated the following well-established proper foundation for the business record exception:

[T]he sponsor of an exhibit offered under this exception need not have personally made it, filed it, or had firsthand knowledge of the transaction represented by it. Such a person need only show that the exhibit was part of certain records kept in the routine course of business and placed in the records by one who was authorized to do so and who had personal knowledge of the transaction represented at the time of the entry.

*Payne v. State*, 658 N.E.2d 635 (Ind.Ct.App. 1995), *trans. denied*, (quoting *Belcher v. State*, 453 N.E.2d 214, 219 (Ind.1983)).

Here, Dr. Giles testified that he was the keeper of GeneScreen's records. Further, the record reveals that Jeanine M. Baisch, Ph.D., GeneScreen Associate Director, prepared the report and had personal knowledge of it. The record also reveals that the testing was conducted in accordance with GeneScreen's standard protocol. In addition, Dr. Baisch's report was notarized. The trial court did not abuse its discretion in admitting the DNA test results.

## IV. *Sufficiency of the Evidence*

When reviewing a claim of insufficient evidence, this court will neither reweigh the evidence nor judge the credibility of witnesses. *Perdue Farms Inc. v. Pryor*, 646 N.E.2d 715, 717 (Ind.Ct.App.1995), *reh'g denied.* Rather, we will examine only the evidence most favorable to the judgment, and if there is substantial evidence of probative value to sustain the judgment, it will not be set aside. *Id.*

Fowler argues that there is insufficient evidence to support the judgment. We disagree. The evidence was unrefuted that Rose and Fowler co-habitated during the relevant time period. Rose testified that she had engaged in sexual intercourse with Fowler on numerous occasions in February, March and April 1979. Neither she nor Fowler used any form of birth control, and Rose did not engage in sexual intercourse with any other man during that period. Rose gave birth to a full-term baby on December 16, 1979. Further, Dr. Giles testified that there was a 99.99% chance that Fowler was the child's biological father and that the odds favoring paternity were two million times greater than the odds favoring non-

paternity. There is sufficient evidence to sustain the trial court's judgment.

Affirmed.

BARTEAU, J., concurs.

CHEZEM, J., concurs in result.