**Lisa GREEN (Intervenor Number 1), Appellant,**

v.

**The ESTATE OF Joseph T. GREEN, II, Deceased, and Joseph T. Green, III, (Intervenor Number 2), Appellee.**

**No. 34A05–9905–CV–240.**

Court of Appeals of Indiana.

Feb. 18, 2000.

*cannot* be applied retroactively.") (emphasis supplied).

William T. Niemier, New Palestine, Attorney for appellant.

Eugene J. McGarvey, Fell Law Firm, Kokomo, J. Conrad Maugans, Mark A. Scott, Bayliff Harrigan Cord & Maugans, Kokomo, Attorneys for appellee.

## OPINION

FRIEDLANDER, Judge

Joseph T. Green II died intestate and was survived by his wife, Mary G. Green, and his children, Gayle V. Green and Lisa Green. In probating the deceased's estate, Mary filed a petition to establish heirship with respect to, among others, Joseph T. Green III (Green III). Lisa Green (the Intervenor) appeals from an order of the probate court that reopened evidence after the parties rested following the heirship proceeding. The Intervenor presents the following restated issue for review:

1. Did the probate court abuse its discretion in reopening the evidence after the parties rested and the Intervenor filed her brief?

2. Was the evidence sufficient to prove that Green III was an heir of the decedent?

We affirm.

The facts favorable to the judgment are that the decedent married Scarlett McCatherine on October 15, 1964. The marriage was dissolved by a default judgment of divorce, entered on September 3, 1971. One child, Lisa Green, was born to

the couple during the marriage. Meanwhile, Mary Green, formerly Mary Davis, was married to Eugene Malvin. Although the record does not indicate when they were married, Mary and Malvin divorced in April 1971. Mary gave birth to a son, whom she named Joseph T. Davis, on November 11, 1970. Therefore, at the time of Joseph T. Davis's birth, Mary was married to Malvin and the decedent was married to Scarlett McCatherine.

The decedent and Mary were married on February 25, 1972. Mary and decedent's relationship began while they were married to Malvin and McCatherine, respectively. On April 28, 1972, the decedent and Mary signed an affidavit in which they acknowledged that they were the biological parents of Joseph T. Davis, and thereby changed the name on his birth certificate to Joseph T. Green III. Thereafter, Green III lived with the decedent and Mary. On August 7, 1979, the decedent took out a life insurance policy on Green III, naming himself as the child's father. On January 11, 1982, the decedent filed a petition for dissolution of marriage in which he identified Green III as his child.[1] On February 26, 1985, the decedent signed an application with a pension plan, listing as one of his contingent beneficiaries, *"Joseph Green* relationship *son ".* *Record* at 477. The decedent signed and submitted an enrollment form with the American Medical Association Medical Expense Plan, dated March 25, 1993, on which he listed Joseph Green III as his son.

On December 10, 1996, Joseph Green II died intestate in Howard County. On December 23, 1996, Mary Green filed a petition for appointment as personal representative of the decedent's estate. The petition alleged that the decedent had three children, Gayle, Joseph, and Lisa. The petition was granted and Mary Green was appointed as the personal representa-

tive of the estate. On May 22, 1997, Mary Green filed a Petition to Determine Heirship, listing the persons claiming relationship to the decedent as Mary Green, Gayle Green, Joseph Green III, and Lisa Green. A hearing was held on the petition on June 30, 1997.

At the hearing, Mary Green filed a Waiver of Fourteen Days Notice of Hearing on Petition to Determine Heirship, that was executed by Green III. At the hearing, the parties stipulated that Lisa Green and Gayle Green were children and heirs of the decedent. Intervenor filed an affidavit of heirship challenging the claim that Green III was an heir of the decedent. Her petition included the following allegations:

2. That Joseph T. Green, II a/k/a Joseph T. Green Jr. was married to Scarlett P. Green, and the dissolution of their marriage was granted by the Circuit Court of Wayne County, State of Michigan, under Cause No. 171 082, on September 3, 1971.

3. The attached obituary incorporated herein as Exhibit "A" shows the decedent marrying Mary Green on February 25, 1969.

4. Under Indiana Law 31–7–6–2, Sec. 2, states that a marriage is void if either party to the marriage had a wife or husband who was living when the marriage was solemnized.

5. Petitioner, by one of her attorneys, had requested a certified copy of the marriage license and birth records on February 7, 1997, but has not received any documentation to date.

6. The determination of heirship should be set for hearing at the Court's earliest convenience.

*Record* at 251. The record reveals that the following exhibits were entered into the record at the June 30 hearing: (1) An application for a marriage license submit-

---

1. It would appear from the record that the action initiated by this petition did not culmi-

nate in an order of dissolution of marriage.

ted by the deceased and Scarlett McCatherine; (2) a September 3, 1971 decree of default judgment of divorce pertaining to the decedent's marriage with McCatherine; (3) Joseph Green III's birth certificate reflecting that his father was Joseph Green II; (4) a marriage license issued to Joseph T Green and Mary Davis on February 25, 1972; and (5) an affidavit submitted by the county clerk in Wayne County, Michigan, stating that the records in that county did not reflect that the marriage license of the decedent and McCatherine was ever returned, and that there was no record of a ceremony ever having been performed. Mary Green testified at the hearing that the decedent was the father of Green III, notwithstanding that she was married to another man when he was conceived and that the name on his original birth certificate was Joseph Davis.

At the conclusion of the hearing, the trial court stated that, regarding the question of Green III's paternity, "the real issue here is whether there was adequate acknowledgement, uh, by Mr. Green of the paternity of Joseph, uh to establish heirship." *Record* at 313. At the close of the hearing, the court took the matter under advisement and gave Intervenor thirty days to file a brief on the issues of which state's law (Indiana or Michigan) applied, and whether the decedent had sufficiently acknowledged paternity of Green III to establish heirship. The court indicated that the estate would be given thirty days to respond to Lisa Green's argument. On August 18, 1997, Lisa Green submitted her Respondent's Post–Trial Brief on Petition to Determine Heirship.

On September 11, 1997, Joseph Green III filed a Motion for Leave to Present Additional Evidence on Petition to Determine Heirship. The petition listed the following reasons for requesting to present additional evidence:

1. That at the hearing on June 30, 1997, for the first time, counsel for the estate learned that counsel of heir, Lisa Green, would contend that Joseph T.

Green was not an heir entitled to inherit from the decedent Joseph T. Green II.

2. That since the date of the hearing, counsel for petitioner and the estate has learned that Joseph T. Green at the time of the hearing did not even know that he was an illegitimate child.

3. That in fairness to Joseph T. Green, it is felt that he should have an opportunity to appear in Court to testify to the decedent's acknowledgement of him as his son, and to present such other evidence as may be appropriate pertaining to the issue.

4. That at the hearing on June 30, 1997, Lisa Green filed an Affidavit of Heirship, basically challenging the marriage of Mary G. Green to the decedent Joseph T. Green, II, and the personal representative and counsel for the estate believed that was the extent of the challenges to heirship.

5. That there is an abundance of evidence which can and should be offered to the Court on the issue of the decedent's acknowledgement of Joseph T. Green as his son during his lifetime.

*Record* at 71–72. Intervenor objected to Green III's request to present additional evidence. Following a hearing, the court granted Green III's motion. Intervenor filed a motion to correct error, alleging that the court erred in granting leave to present additional evidence. On August 25 and December 9, 1998, the court conducted a hearing at which Green III presented additional evidence on the question of the decedent's acknowledgement of paternity. On February 9, 1999, the court set forth the findings and conclusions supporting its determination that Green III was an heir of the decedent.

1.

Intervenor contends that the trial court erred in granting Green III's motion to present additional evidence.

The trial court may exercise its discretion in determining whether to per-

mit a party to present additional evidence after both parties have rested. *Stepp v. Duffy*, 654 N.E.2d 767 (Ind.Ct.App.1995), *trans. denied.* In exercising its discretion, the trial court is guided by several considerations, including (1) whether the party opposing such a motion would suffer prejudice, (2) whether the party seeking the reopening appears to have rested inadvertently or purposely, (3) the stage of the proceedings at which the request was made, and (4) whether real confusion or inconvenience would result from granting the request. *Walker v. State*, 587 N.E.2d 675 (Ind.1992). "The presumption that the trial court correctly followed the law is one of the strongest presumptions applicable to our consideration of a case on appeal." *Fuehrer v. Fuehrer*, 651 N.E.2d 1171, 1175 (Ind.Ct.App.1995), *trans. denied.*

Green III's motion for leave to present additional evidence was premised upon the claim that he did not know, prior to the hearing, that his birth was illegitimate. We can discern nothing in the record that would belie his claim. Therefore, he would not have been aware of a need to establish his right to inherit, beyond merely establishing that which he thought was uncontroversial, *i.e.*, the fact that he was the biological son of the decedent. Moreover, the only prejudice alleged by Intervenor in opposing Green III's motion to present additional evidence was that she incurred additional legal fees as a result of the granting of the motion, and more time elapsed before she was able to obtain her inheritance.

First, we are unpersuaded that the particular prejudice claimed by Intervenor is the kind of prejudice that counsels against granting a motion to present additional evidence. The presenting of additional evidence did not cause confusion concerning the nature of the issues before the court. Nor was the inconvenience she suffered, *i.e.*, the extra time and money spent in resolving the matter, such that it impeded the presentation of her case. The facts as he reasonably knew them did not place

Green III on notice that his paternity, and thus his heirship, would be a contested issue. The trial court did not abuse its discretion in granting Green III's motion to present additional evidence.

### 2.

Intervenor contends that the evidence was insufficient to support the trial court's conclusion that Green III was a son, and thus an heir, of the decedent.

■ When reviewing challenges to the sufficiency of the evidence, our standard of review is well settled. We neither reweigh the evidence nor judge witness credibility. *Fowler v. Napier*, 663 N.E.2d 1197 (Ind. Ct.App.1996). We examine only the evidence and reasonable inferences favorable to the judgment. We will not set aside a judgment based upon insufficient evidence so long as there is substantial evidence of probative value to sustain the judgment. *Id.*

■ We note first that the burden of proof rests on the child who alleges that he is an illegitimate child entitled to inherit from his putative father. *Tekulve v. Turner*, 391 N.E.2d 673, 181 Ind.App. 295 (1979). Intervenor contends that Green III has not met that burden, which is codified at Ind.Code Ann. § 31–14–7–1 (West 1998). According to that provision, a man is presumed to be a child's biological father if the man and the child's biological mother were married and the child was born during the marriage. Lisa Green acknowledges that the presumption created in IC § 31–14–7–1 may be rebutted, but mischaracterizes the nature of the evidence required to rebut the presumption. According to Lisa Green,

> This presumption may only be rebutted by direct, clear, and convincing evidence that the husband is impotent; was absent so as to have no access to the mother; was absent during the entire time the child must have been conceived; was present with mother only in circumstances which clearly prove there was no

sexual intercourse; was sterile during time [sic] child must have been conceived; or is excluded as child's father based upon blood grouping test results.

Appellant's Brief at 14–15 (citing *Cooper v. Cooper*, 608 N.E.2d 1386 (Ind.Ct.App. 1993), *trans. denied*). The factors cited by Lisa Green are indeed factors that this court has indicated may be used to rebut the presumption of paternity. However, the list of factors set out in *Cooper* is not exclusive, but merely provides examples of factors that may be presented to rebut the presumption. In *Minton v. Weaver*, 697 N.E.2d 1259, 1260 (Ind.Ct.App.1998), *trans. denied*, this court held that "[I]t is possible that other evidence can constitute direct, clear, and convincing evidence capable of rebutting the marriage presumption."

Ind.Code Ann. § 29–1–2–7 (West 1998) provides as follows:

> (b) For the purpose of inheritance (on the paternal side) to, through, and from a child born out of wedlock, the child shall be treated as if the child's father were married to the child's mother at the time of the child's birth, if one (1) of the following requirements is met:

> \* \* \* \* \*

> (4) The putative father marries the mother of the child and acknowledges the child to be his own.

> (c) The testimony of the mother may be received in evidence to establish such paternity and acknowledgement, but no judgment shall be made upon the evidence of the mother alone. The evidence of the mother must be supported by corroborative evidence or circumstances.

█ Green III's biological mother, Mary Green, introduced an official marriage license as evidence of her marriage to the decedent. This constituted sufficient proof that the decedent married her. Mary Green also testified that the decedent acknowledged Green III as his son.

The record contains the following evidence corroborative of Mary Green's testimony in this regard: (1) An affidavit signed by the decedent acknowledging that he was Green III's biological father; (2) a 1979 life insurance application on which the decedent identified himself as Green III's father; (3) a 1982 petition for dissolution of marriage on which the decedent listed Green III as his son; (4) a 1985 pension plan application completed and signed by the decedent listing Green III as one of the contingent beneficiaries and identifying him as the decedent's son; and (5) a 1993 medical expense plan enrollment form signed and submitted by the decedent and listing Joseph Green III as his son. We conclude that the aforementioned evidence constitutes direct, clear, and convincing evidence corroborating Mary Green's assertion that the decedent acknowledged that he was the biological father of Green III. Therefore, the evidence was sufficient to rebut the marriage presumption, and to support the trial court's conclusion that Joseph Green III is an heir of the decedent, Joseph Green II.

Judgment affirmed.

GARRARD, Sr. J., and DARDEN, J., concur.