Peggy SCHMITTER and Hans Schmitter, Appellants/Petitioners,

v.

Ronald W. FAWLEY,
Appellee/Respondent.

No. 91A02–1003–JP–334.

Court of Appeals of Indiana.

June 29, 2010.

Michael B. Troemel, Jack R. O'Bryan, Lafayette, IN, Attorneys for Appellants.

Jim Brugh, Logansport, IN, Attorney for Appellee.

## OPINION

BRADFORD, Judge.

Appellants/Petitioners Peggy and Hans Schmitter appeal from the trial court's entry of summary judgment in favor of Appellee/Respondent Robert W. Fawley in their paternity action against him and the denial of their request for genetic testing of Fawley. We affirm.

### FACTS AND PROCEDURAL HISTORY

On May 15, 1973, Peggy filed a paternity action against Fawley while pregnant with her son Hans. Hans was born on September 16, 1973. On March 8, 1974, Fawley filed a motion to continue the paternity action due to his service in the Navy in the Vietnam War. On February 22, 1975, Peggy married Stephen Busch and, on July 15 of that year, Busch filed a petition to adopt Hans. At some point in 1975, the White Circuit Court entered an order providing that Hans had been adopted by Busch.

On June 22, 2009, the then thirty-five-year-old Hans and his mother, Peggy, filed a request that the paternity action proceed. On September 4, 2009, Fawley filed motions to dismiss and for summary judgment. On November 4, 2009, the Schmitters filed a motion for genetic testing of Fawley and responses to Fawley's motions to dismiss and for summary judgment. On November 10, 2009, the trial court held a hearing on the pending motions. On December 4, 2009, the trial court issued an order granting Fawley's motions to dismiss and for summary judgment and denying the Schmitters' motion for genetic testing.

### DISCUSSION AND DECISION

I. **Motion for Summary Judgment**

### in Paternity Action[1]

The Schmitters contend that the trial court erred in granting Fawley's motion for summary judgment. When reviewing the grant or denial of a summary judgment motion, we apply the same standard as the trial court. *Merchs. Nat'l Bank v. Simrell's Sports Bar & Grill, Inc.*, 741 N.E.2d 383, 386 (Ind.Ct.App.2000). Summary judgment is appropriate only where the evidence shows there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. *Id.*; Ind. Trial Rule 56(C). All facts and reasonable inferences drawn from those facts are construed in favor of the nonmoving party. *Id.* To prevail on a motion for summary judgment, a party must demonstrate that the undisputed material facts negate at least one element of the other party's claim. *Id.* Once the moving party has met this burden with a prima facie showing, the burden shifts to the nonmoving party to establish that a genuine issue does in fact exist. *Id.* The party appealing the summary judgment bears the burden of persuading us that the trial court erred. *Id.*

Fawley's uncontradicted designated evidence shows that Busch adopted Hans in 1975. At the time, Indiana Code section 31–3–1–9 (1975)[2] provided that if the biological parents of an adopted person were alive, they would be relieved of all legal duties and obligations to the adopted child and divested of all rights with respect to the child by the adoption. "In an adoption proceeding, the parental rights are irretrievably terminated once the decree of adoption has been entered." *Holderness v. Holderness*, 471 N.E.2d 1157, 1159 (Ind. Ct.App.1984). "A decree of adoption severs forever every part of the parent and child relationship; severs the child entirely from its own family tree and engrafts it upon that of another. For all legal and practical purposes a child is the same as dead to its parents." *In re Adoption of Thomas*, 431 N.E.2d 506, 513 (Ind.Ct.App. 1982), *superseded by rule on other grounds, as recognized in Bowlers Country Club, Inc., v. Royal Links USA, Inc.*, 846 N.E.2d 732, 735–36 (Ind.Ct.App.2006), *trans. denied.* "This rule means when an adoption becomes final the adoptive parent becomes the actual parent of the child. There can be no other conclusion." *In re the Visitation of Menzie*, 469 N.E.2d 1225, 1227 (Ind.Ct.App.1984). So, assuming that Busch's adoption of Hans was valid, it terminated all duties and obligations that Fawley might ever potentially have had to Hans as his putative biological father.

The Schmitters, however, contend that the adoption is void, designating evidence that Karl Overbeck, Fawley's attorney in the paternity matter, signed the adoption decree as Judge *Pro Tempore.* While we are certainly inclined to agree that it might have been prudent for Judge Overbeck to disqualify himself from ruling in a

---

1. Fawley's motion to dismiss on the basis that the paternity action is barred by *res judicata* appears to be essentially a motion for judgment on the pleadings. *See Wagle v. Henry*, 679 N.E.2d 1002, 1004 (Ind.Ct.App.1997). "A judgment on the pleadings pursuant to Ind. Trial Rule 12(C) is proper only when there are no genuine issues of material fact and the facts shown by the pleadings clearly entitle the movant to judgment." *Id.* "If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Trial Rule 56." *Id.* Because both parties designated evidence outside the pleadings, evidence the trial court apparently considered, we shall treat his motion to dismiss and for summary judgment as a motion for summary judgment alone.

2. Currently Indiana Code section 31–19–15–1 (2009).

case that affected a current or former client's rights, we conclude that the Schmitters may not challenge the adoption on that basis at this point.

Even if Judge Overbeck should have disqualified himself, we cannot agree that the adoption is void, only that it is merely voidable, which fatally undercuts the Schmitters' argument. *See Singleton v. State*, 173 Ind.App. 606, 609, 364 N.E.2d 1041, 1043 (1977) ("Disqualification of the judge may be waived by the consent of the parties and the judge. Thus, the judgment was not void per se, but simply voidable."). Because the Schmitters rely exclusively on their contention that the adoption is void *ab initio*, their argument fails on this basis.

▓▓▓ In any event, we also conclude that circumstances of this case create a presumption that, at the very least, Peggy should have known of the conditions she now claims should have disqualified Judge Overbeck in 1975 and has therefore waived the issue. "[T]he disqualification of the trial judge must be seasonably raised." *Id.* "If a complaining party sits idly by and awaits the outcome of the proceedings after receiving knowledge of a trial judge's disqualification, or after the circumstances or law creates a presumption of such knowledge, he will be held to have waived the disqualification and consented to trial by the judge presiding." *Id.* In our view, a reasonable person would not have failed to notice that the person sitting as judge in Hans's adoption case was also opposing counsel in the paternity action against Fawley. Indeed, the Schmitters seem to concede that Peggy was aware of the potential conflict at the time, as they do not even argue that Peggy was unaware of it, relying solely on their contention that the adoption is void *ab initio*. We conclude that any objections to Judge Overbeck's presiding over the adoption were waivable

and that the Schmitters have done just that due to Peggy's failure to raise the issue in 1975. Consequently, Busch's adoption of Hans is valid and final and extinguishes any obligations and duties that Fawley might ever have had as Hans's putative biological father.

## II. Statutory Right to Compel Genetic Testing

▓▓▓ The Schmitters also contend that, regardless of the outcome of the paternity action, they are entitled to compel Fawley to submit to genetic testing because they filed their request before it was dismissed. Indiana Code section 31–14–6–1 (2009) provides that, "Upon the motion of any party, the court shall order all of the parties to a paternity action to undergo blood or genetic testing."

> The interpretation of a statute is a question of law for the courts and is reviewed under a *de novo* standard. The rules of statutory construction require courts to give the words of a statute their plain and ordinary meaning unless the statute otherwise provides definitions, or unless the construction is plainly repugnant to the intent of the legislature. However, if a statute is susceptible to more than one interpretation, it is ambiguous. If a statute is ambiguous, then courts must give effect, and implement the intent of the legislature. In doing so, courts must examine the whole statute and not give too much meaning to any particular word or words in isolation, but should extract the purpose of the legislation and avoid an unjust or absurd result.

*Ind. Bureau of Motor Vehicles v. Orange*, 889 N.E.2d 388, 390 (Ind.Ct.App.2008) (citations and quotation marks omitted).

Regardless of the plain language of the statute, we conclude that adoption of the

Schmitters' argument would lead to a patently absurd and unjust result in this case and potentially in many others.[3] We cannot believe that the General Assembly intended to allow for compelled genetic testing even in cases, such as this one, where there is no legitimate chance of establishing legal paternity. The Schmitters' paternity action was correctly dismissed, and it would therefore be pointless to allow genetic testing now. We observe that it would be especially pointless in cases such as this, where the Schmitters' paternity action is clearly barred by estoppel, as Peggy consented in Busch's adoption of Hans. *See In re Guardianship of Brewer*, 922 N.E.2d 82, 89 (Ind.Ct.App.2010) (defining estoppel as "[a] bar that prevents one from asserting a claim or right that contradicts what one has said or done before or what has been legally established as true").

The advent of more sophisticated genetic testing has done nothing to alter our view that "[t]he purpose of the blood [or genetic] test is to determine paternity." *Rundel v. Shady*, 492 N.E.2d 694, 697 (Ind.Ct.App.1986). Once that purpose no longer exists, the need for testing under Indiana Code section 31–14–6–1 evaporates. *See id.* (affirming denial of mother's request for blood test to determine paternity of putative father where his paternity was conclusively admitted by their joint pleadings). We conclude that a mere desire to know the identity of one's biological father, whatever the reason, is insufficient once establishing legal paternity is not possible. The trial court correctly denied the Schmitters' motion to compel genetic testing on Fawley.

The judgment of the trial court is affirmed.

RILEY, J., and MATHIAS, J., concur.

---

**3.** Although we have no reason to believe that Hans has any ill intentions in requesting Fawley submit to genetic testing, ruling in his favor would open the door to those with vexatious intent. Under such a ruling, any person could sue any other person to establish paternity and then force genetic testing so long as the request were submitted before dismissal.