

FILED

Apr 27 2016, 8:37 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANTS

R. Robert Yeager
Yeager Good & Baldwin, P.A.
Shelbyville, Indiana

ATTORNEYS FOR APPELLEE

Robert T. Thopy
Eric M. Glasco
McNeely Stephenson
Shelbyville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Betty Thurman and Carolyn Duncan, <br><br> *Appellants-Petitioners,* <br><br> v. <br><br> Kimberly L. Skinner, <br><br> *Appellee-Respondent* | April 27, 2016 <br><br> Court of Appeals Case No. 73A04-1510-ES-1678 <br><br> Appeal from the Shelby Circuit Court <br><br> The Honorable Charles D. O'Connor, Judge <br><br> Trial Court Cause No. 73C01-1407-ES-10 |

**Baker, Judge.**

Betty Thurman and Carolyn Duncan (the Sisters) appeal the trial court's order on their petition to determine the heirship of their brother, Lloyd Dyer (Lloyd), who died intestate. The trial court found that Kimberly Skinner (Kimberly) is Lloyd's daughter and is entitled to inherit as his sole heir. The Sisters argue that there is insufficient evidence supporting this conclusion. They also argue that the trial court erred by denying their motion for Kimberly to undergo a DNA test to establish (or refute) her claim that Lloyd was her father. Finding sufficient evidence and finding no other error, we affirm.

## Facts

Kimberly was born on January 7, 1968, to Linda Adams, who was unmarried at the time. Kimberly's birth certificate listed Linda as her mother and did not list a father.

Linda and Lloyd were married on December 25, 1974. For the next eight years, Linda, Lloyd, Kimberly, and Linda's son, Greg,[1] lived together as a family. They lived in the same household and participated in family activities such as picnics, softball games, movies, and vacations. They celebrated holidays as a family and visited with various extended family members. At one point when Kimberly was a child, she broke her arm. Lloyd took her to the hospital and provided his health insurance plan information to cover the costs

---

[1] The trial court found that Greg has waived any right to claim that he is an heir of Lloyd. Greg is not a party to this appeal.

of her medical care. Lloyd explicitly acknowledged Kimberly as his daughter in the presence of at least one family friend. Lloyd told Kimberly that he was her father.

[4] On July 5, 1983, Lloyd executed two affidavits: an Affidavit of Legitimation, in which he attested that he was Kimberly's natural father; and an Affidavit Requesting Amendment, in which Lloyd requested that his name be placed on Kimberly's birth certificate as her father. Subsequently, Kimberly received a new birth certificate showing that her last name became Dyer and that Lloyd was her father.

[5] Lloyd and Linda divorced on May 13, 1985. Kimberly was seventeen years old at that time. Linda was not represented by counsel in the dissolution action and did not participate in the proceeding other than to sign a document stating, in part, that there were no children born of the marriage. The issue of Kimberly's paternity was not investigated, litigated, or determined in the dissolution proceeding.

[6] Lloyd died intestate on July 10, 2014. On July 28, 2014, Kimberly and the Sisters filed competing petitions for issuance of letters of administration of Lloyd's estate. On August 13, 2014, the Sisters filed a petition to determine heirship, and in November 2014, they filed a petition for genetic testing. Following a hearing, the trial court denied the petition for genetic testing on January 27, 2015. Following an August 17, 2015, bench trial on heirship, the

trial court entered judgment in favor of Kimberly, finding, in relevant part, as follows:

5. . . . The evidence clearly, unambiguously, directly, and convincingly establishes that decedent acknowledged Kimberly as his own; decedent executed, under oath, two affidavits wherein he stated that he was the father of Kimberly. . . .

6. Decedent provided shelter and support from the time shortly before his . . . marriage to Linda . . . until sometime in the year 1983. Furthermore decedent orally acknowledged Kimberly as his daughter. . . .

7. The Affidavit of legitimation signed by both decedent and Linda is entitled to significant weight. Although Petitioners have presented numerous witnesses who testified they were in close contact with decedent over a long period of time but never heard decedent mention a child or daughter[,] that evidence does not overcome decedent's affidavit stating that he was Kimberly's natural father.

8. Decedent caused his name to be placed as Kimberly's father on her birth certificate and requested her name to be changed on her birth record from Kimberly L. Adams to Kimberly L. Dyer. Decedent acknowledged Kim as his own in writing, and no evidence was presented that decedent was unduly influenced in making such acknowledgement.

Appellant's App. p. 19 (internal citations omitted). The trial court held that Kimberly is Lloyd's sole heir and denied the Sisters' petition. The Sisters now appeal.

# Discussion and Decision

## I. Sufficiency of the Evidence

First, the Sisters argue that there is insufficient evidence supporting the trial court's conclusion that Kimberly is Lloyd's heir. When reviewing challenges to the sufficiency of the evidence, our standard of review is well settled. We will neither reweigh the evidence nor assess witness credibility, and will examine only the evidence and reasonable inferences favorable to the judgment. *Green v. Estate of Green*, 724 N.E.2d 260, 264 (Ind. Ct. App. 2000). We will affirm if there is substantial evidence of probative value to sustain the judgment. *Id.*

Indiana Code section 29-1-2-7 provides that, for the purpose of inheritance on the paternal side by a child born out of wedlock, "the child shall be treated as if the child's father were married to the child's mother at the time of the child's birth, if" one of a series of possible conditions is met. At issue in this case is the condition that "[t]he putative father marries the mother of the child and acknowledges the child to be his own." I.C. § 29-1-2-7(b)(4). The burden of proof rests on the child seeking to inherit from a putative father. *Regalado v. Estate of Regalado*, 933 N.E.2d 512, 519 (Ind. Ct. App. 2010). This inquiry is a factually sensitive one that is evaluated on a case-by-case basis. *See id.*, 933 N.E.2d at 520 (finding that oral statements of acknowledgement of a child born

out of wedlock were sufficient to meet the "acknowledgement" burden); *Green*, 724 N.E.2d at 265 (finding that evidence including affidavit, life insurance application, dissolution petition, and medical expense plan enrollment listing out-of-wedlock child as decedent's child was sufficient to meet "acknowledgement" burden).

[10] The instant case is replete with evidence supporting the trial court's conclusion that Lloyd acknowledged Kimberly as his own daughter:

- Lloyd, Linda, Kimberly, and Greg lived together as a family, in the same residence, for approximately eight years. They participated in activities, celebrated holidays, and took vacations as a family.
- When Kimberly broke her arm as a child, Lloyd took her to the hospital and listed his own insurance policy to cover her medical expenses.
- Lloyd explicitly introduced Kimberly as his daughter to family and friends on at least one occasion.[2]

Most convincingly of all, Lloyd executed not one, but two, affidavits attesting that he was the natural father of Kimberly. He asked that her last name be changed to his. He executed these affidavits under oath. Whether the affidavits strictly complied with relevant statutes, as the Sisters contend, is beside the point. The clear import of these affidavits was Lloyd acknowledging Kimberly as his daughter.

---

[2] The Sisters ask that we discount this evidence because it was introduced by allegedly leading questions. We address this argument only to note that even if this evidence had been improperly admitted—which we do not find—it would not affect the result of this appeal.

[11] The sum of the Sisters' attempts to discount the above evidence amounts to a request that we reweigh evidence and assess witness credibility. As noted above, we will not do so. While we decline to address many of their specific arguments for this reason, we will consider their argument regarding the dissolution proceeding. In the dissolution proceeding, Lloyd and Linda represented to the court that no children had been born of the marriage. Under certain circumstances, Kimberly could be bound to that finding. *See In re Paternity of J.W.L.*, 682 N.E.2d 519, 520-21 (Ind. 1997) (if paternity is "fully litigated" in a divorce proceeding, then result may be binding on child); *Russell v. Russell*, 682 N.E.2d 513, 518 (Ind. 1997) (if a dissolution court determines a child is or is not a child of the marriage and that finding is based on the results of blood or genetic testing and the issue was fully litigated, the child is bound by the determination). In this case, it is apparent that the issue of paternity was not "fully litigated." Indeed, it appears as though it was not litigated at all. And there certainly was not a blood or genetic test completed as part of that proceeding. Under these circumstances, we find that Kimberly is not estopped by anything that transpired in her parents' divorce proceedings.[3]

[12] We find that the evidence in the record readily supports the trial court's conclusion that Lloyd acknowledged Kimberly as his child. We decline the Sisters' requests to reweigh the evidence and assess witness credibility. We

---

[3] To the extent that the Sisters argue that Lloyd's failure to name Kimberly as a child in the dissolution proceeding constitutes evidence that he did not acknowledge her as his child, we note that this is yet another request that we reweigh the evidence. We decline to do so.

affirm the trial court's conclusion that Kimberly is entitled to inherit from Lloyd as though he and Linda were married at the time of Kimberly's birth.

## II. Genetic Testing

[13] Finally, the Sisters contend that the trial court should have granted their motion for genetic testing. The precise legal basis for their motion is unclear. As part of a paternity action, a trial court must order genetic testing upon the motion of any party to the action. Ind. Code § 31-14-6-1. But the Sisters are not seeking to establish paternity, nor could they have filed a paternity action had they desired to. Ind. Code § 31-14-4-1 (only mother, putative father, child, or certain governmental entities may file a paternity action).

[14] Instead, the Sisters are seeking to contest Kimberly's claim of heirship. As noted above, the relevant statutory provision states that if Lloyd married Linda and acknowledged Kimberly as his own, then heirship is established. I.C. § 29-1-2-7(b). Thus, the results of any blood or genetic testing would be irrelevant to the trial court's heirship determination.

[15] This Court has had occasion to address similar issues on at least two occasions. In *Estate of Lamey v. Lamey*, the brother of the decedent petitioned the court to determine heirship; he challenged the right of the decedent's sole child to inherit. 689 N.E.2d 1265 (Ind. Ct. App. 1997). The brother asked the court to order a genetic test to determine whether decedent was, in fact, the biological father of the child. The Court cautioned that the brother was "wrong in assuming that, by virtue of petitioning the court to determine heirship, he has

automatic standing to petition the court to order paternity blood testing for a child for whom he is not also asserting his own paternity." *Id.* at 1268. The brother argued that he was attempting to determine heirship rather than paternity, so his petition should not be constrained by the paternity statute. The *Lamey* Court did not find this argument compelling, holding as follows:

> In the present case there is no practical difference between [paternity and heirship] actions. Moreover, the laws of this state do not expressly authorize a third party, who is *not* asserting paternity in the child, to petition the court for a mandatory determination of a child's paternity, under the guise of an "heirship" challenge . . . . We decline [the] invitation to judicially create such a law.

*Id.* at 1269 (emphasis original).

[16] Furthermore, in *Schmitter v. Fawley*, this Court held that the purpose of compelled genetic testing in the context of determining a child's biological father is to "establish[] legal paternity." 929 N.E.2d 859, 863 (Ind. Ct. App. 2010). Therefore, if establishing legal paternity is not the purpose of the requested blood test, the motion is properly denied. *Id.*

[17] In this case, the Sisters are not seeking to establish paternity. The purpose for which they seek genetic testing—to determine heirship—is not a valid reason to request genetic testing. Moreover, the results of any genetic or blood test would be irrelevant to the trial court's ultimate determination under Indiana Code section 29-1-2-7(b). Consequently, we find no error in the trial court's denial of the motion for genetic testing.

The judgment of the trial court is affirmed.

May, J., and Brown, J., concur.